06-3923-cv
Robinson v. Sheet Metal Workers' National Pension Fund Plan A

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

———————

August Term, 2007

(Argued: October 5, 2007                    Decided: February 5, 2008 )

Docket No. 06-3923-cv

————————————————

ROBERT J. ROBINSON JR., on behalf of himself and all others similarly situated and
THOMAS J. DONOHUE, on behalf of himself and all others similarly situated,

*Plaintiffs-Appellants*,

– v. –

SHEET METAL WORKERS' NATIONAL PENSION FUND, PLAN A, MARC E. LEBLANC,
MICHAEL J. SULLIVAN, CHARLES HOLT, JOHN G. AGRELA, KENNETH D.
ALEXANDER, RONALD PALMERICK, BRUCE STOCKWELL, PHIL MEYERS, R. DEAN
STEWARD and PAUL COLLINS JR.,

*Defendants-Appellees*.

————————————————

Before: FEINBERG, CALABRESI, and WESLEY, *Circuit Judges*.

Appellants assert that the amendment of their disability pension, after they had become
disabled and were receiving benefits from it, violates the Employee Retirement and Income
Security Act of 1974, 29 U.S.C. §§ 1001-1461, and constitutes both a breach of contract and a
breach of fiduciary duty.  Deciding, by agreement of the parties, on a stipulated record, the
district court found for Appellees on all claims.
The appeal is dismissed as moot as to Appellant Donohue and all class members over the
age of fifty-five, and the judgment of the district court is affirmed as to Appellant Robinson and
all other class members.

KATHRYN EMMETT, Emmett & Glander (Christine Caulfield, *on the brief*), Stamford, Conn., *for Plaintiffs-Appellants.*

STEPHEN M. ROSENBLATT, Deputy General Counsel, Sheet Metal Workers' National Pension Fund, Alexandria, Va., *for Defendants-Appellees.*

GUIDO CALABRESI, *Circuit Judge*:

Plaintiffs-Appellants Robert Robinson, Jr. and Thomas Donohue and the class they represent were recipients of an Industry-Related Disability Pension ("IRD") from Defendant-Appellee Sheet Metal Workers' National Pension Fund. In 2004, the IRD was amended to add an earnings limitation. Appellants, who were receiving the IRD before the 2004 amendment went into effect, assert that the amendment's application to them violates the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and constitutes both a breach of contract and a breach of fiduciary duty.[1] The district court, Kravitz, *J.*, acting on a stipulated record, found for Appellees on all issues. *See Robinson v. Sheet Metal Workers' Nat'l Pension Fund*, 441 F. Supp. 2d 405 (D. Conn. 2006). Appellants brought this timely appeal.

I. BACKGROUND

*A. The Pension Plan*

---

[1] Appellants also asserted in the district court that Appellees were promissorily estopped from applying the earnings limitation to them. *See Robinson v. Sheet Metal Workers' Nat'l Pension Fund*, 441 F. Supp. 2d 405, 432-33 (D. Conn. 2006). Appellants, however, have not raised that issue before this Court; it is therefore waived. *See Dillon v. Morano*, 497 F.3d 247, 255 (2d Cir. 2007).

The Sheet Metal Workers' National Pension Fund is a multi-employer plan, established in 1966. In 1994, the Plan was amended by its Trustees to include the IRD, in addition to its Normal Retirement Pension, Early Retirement Pension, and Disability Pension. The IRD pays benefits to participants when they are "totally and permanently unable to return to employment in the Sheet Metal Industry," but are capable of gainful employment in some other field. The IRD is available to employees who have not attained the Normal Retirement Age (sixty-five), but who have earned sufficient pension and service credits. IRD benefits are calculated as follows:

> The [IRD] shall be 10% greater than the amount of the Early Retirement Pension
> . . . , except that in no event shall the [IRD] exceed the Normal Retirement Pension
> amount . . . that would be payable if the Participant had attained Normal
> Retirement Age on the day he became disabled.

Eligibility for the IRD "is determined by the Trustees, in their sole and absolute discretion," and the Trustees may make eligibility subject to periodic medical examinations. "These terms and any other terms as deemed necessary by the Trustees may be required as a prerequisite to the granting or continuance of an [IRD]." Beneficiaries who lose eligibility for an IRD on account of recovery from their disability may be entitled to a different type of pension, including Early Retirement or Normal Retirement. A participant who is eligible to receive benefits under the Plan "shall be entitled upon retirement to receive the monthly benefits provided for the remainder of his life, subject to the provisions of this Plan."

The Plan gives the Trustees "the sole and absolute power, authority and discretion" to interpret and apply the Plan. It moreover provides that the Trustees may "amend[] [it] at any time . . . *consistent with the provisions of the Trust Agreement*" (emphasis added). Thus, the Trustees' amending power is limited by the provision that "no amendment shall be effective if it

is deemed to decrease the accrued benefit of any Participant."[2] Under the Plan, "'Accrued Benefit' shall mean generally the annual pension benefit provided under the Plan commencing at Normal Retirement Age." The Plan more specifically provides that

> a Plan Amendment that has the effect of (1) eliminating or reducing an early retirement benefit or a retirement-type subsidy or (2) eliminating an optional form of benefit (as determined under applicable Treasury Regulations), with respect to benefits attributable to service before the amendment shall be treated as reducing Accrued Benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a Participant who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy. In general, a retirement-type subsidy is a subsidy that continues after retirement, but does not include a qualified disability benefit (within the meaning of Section 411(a) (9) of the Code), a medical benefit, a social security supplement, or a death benefit (including life insurance).

The Plan also defines "Vested Status," which is the status "attained when a Participant acquires a nonforfeitable right to his Normal Retirement Benefit or a nonforfeitable right to 100 percent of his Accrued Benefit." A participant acquires a nonforfeitable right to his Normal Retirement Benefit upon reaching the Normal Retirement Age.

In accordance with their obligations under ERISA, 29 U.S.C. § 1022, Appellees have issued Summary Plan Descriptions ("SPDs"), which summarize the terms of their plans. The SPDs state that they do not comprehensively set forth all of the terms of the Plan. The SPDs in the Plan before us repeatedly note that the Trustees have the authority to amend the Plan. Thus, the 1997 SPD states that "[t]he Trustees are empowered to amend the Plan at any time in accordance with the law and for such purposes as the Trustees deem appropriate." And the 2002 SPD confirms that "[t]he Trustees reserve the right to amend, modify or terminate the Plan at any

---

[2]There are two exceptions to the rule that no amendment can decrease the accrued benefit of any participant: (1) if the amendment is necessary to comply with federal law, and (2) if the amendment meets the requirements of § 302(c)(8) of ERISA and § 412(c)(8) of the Internal Revenue Code and the Secretary of Labor has either approved it or failed to disapprove it within ninety days. Neither exception is relevant here.

time," and also that "[t]he Board of Trustees reserves the right to terminate, modify, suspend or amend the Pension Plan at any time, in whole or in part, under circumstances allowed by ERISA and the terms of the governing Trust Agreement. The Board will make such changes to the Plan by Plan Amendment. You will be notified in writing of any changes that are made."

In a November 2004 amendment, the Industry-Related Disability Pension was renamed the Industry-Related Disability *Benefit*. The amended Plan, for the first time, imposed an earnings limitation on IRD benefits:

> Effective for Plan years beginning on or after January 1, 2005, an [IRD] recipient who earns $35,000 or more in any calendar year, in any employment whatsoever, will be deemed no longer disabled for any purpose under the Plan and his benefit shall terminate . . . .

IRD recipients were notified of this change by letter in December 2004.[3]

*B. Appellants*

Robert Robinson, Jr., who was born in 1955, began working in the sheet metal trade in 1973. After a hip replacement surgery in 1999, he applied for the IRD. The application form stated that he would "receive the monthly benefit payment listed for [his] lifetime." It also noted that "Plan rules prohibit a pensioner receiving an [IRD] to work in Disqualifying Employment, BUT allows [*sic*] any other employment without an earnings' limitation." His application was granted, and he began receiving IRD benefits.

Thomas Donohue began working in the sheet metal industry in 1969. In 1998, he became disabled. At the time, he was fifty-five years old and therefore had the option of retiring on either an Early Retirement Pension or an IRD. Because the IRD offered greater benefits, he

---

[3]In October 2005, the Plan was again amended to eliminate the earnings limitation for those fifty-five or older. *See infra* note 4.

selected that option.

In January 2005, Robinson filed an administrative appeal protesting the November 2004 amendment and its application to his benefits. This appeal was denied. In June 2005, he filed this action; in September 2005, it was amended to add Donohue as a plaintiff. Appellants then moved to certify the case as a class action, and the parties agreed on a joint stipulation as to certification. The district court certified a class of "[a]ll receipients of an [IRD] from the Plan who commenced receiving an [IRD] at any time during the period of January 1, 1994 to December 31, 2004."[4] Shortly thereafter, the parties agreed to seek judgment on a stipulated record. And on July 27, 2006, the district court found for Appellees on all counts.

## II. DISCUSSION

Before us, Appellants assert three claims. First, they argue that applying the earnings limitation to their IRDs would violate ERISA's "anti-cutback" rule, 29 U.S.C. § 1054(g). Second, they contend that the earnings limitation constitutes a breach of contract. And finally, they assert that the earnings limitation would, as to them, be a breach of Appellees' fiduciary duties.

We note first that Appellants' fiduciary duties claim derives from the contract claim, the

---

[4]The Plan was again amended in October 2005 to restrict the earnings limitation to those under the age of fifty-five. Donohue is therefore now unaffected by the limitation, and his claim—along with the claims of other class members over the age of fifty-five—is now moot. Robinson and the remainder of the class members are, however, unaffected. The Supreme Court has held that the mootness of the claims of even the *only* lead plaintiff does not moot a class action. *See Kremens v. Bartley*, 431 U.S. 119, 129-30 (1977); *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 755-56 (1976); *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). It follows *a fortiori* that the mootness of the claims of one of two lead plaintiffs does not moot the class action, so long as "there are questions of law or fact common to the class" and "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(2), (4). As that is the case here, we proceed to consider the merits as to Robinson and those class members under the age of fifty-five.

-6-

ERISA claim, or both. If Appellees owed a fiduciary duty to Appellants in this case, it must have arisen as a result of contractual or statutory obligations. And hence any fiduciary duty claim depends for its survival on the validity of these latter claims. It is these we therefore must examine.

The district court thoroughly analyzed Appellants' ERISA anti-cutback claims and rejected them. *Robinson*, 441 F. Supp. 2d at 416-26. We concur completely in that portion of the district court's opinion. In particular, we agree with that court that the IRD is a welfare benefit plan, not a pension plan, as those terms are used in ERISA. We moreover agree with its determination that the IRD is an ancillary benefit, not an accrued benefit. Either of these findings would suffice to exempt the IRD from ERISA's anti-cutback rule.

We turn next to Appellants' breach of contract claim. Because the district court's judgment was based entirely on a stipulated record, our standard of review for that claim is *de novo*. *Skoros v. City of N.Y.*, 437 F.3d 1, 13 (2d Cir. 2006). We have held that, "absent explicit language to the contrary, a plan document providing for disability benefits promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1212 (2d Cir. 2002). Appellees thus bear the burden of identifying "explicit language reserving [the Fund's] right to terminate or alter a disabled employee's benefits." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 577 (2d Cir. 2006) (internal quotation marks omitted).

Appellees assert that their statements—in both the Plan and the SPDs—which note that the Trustees may amend the Plan at any time suffice to satisfy this requirement. We agree. As noted above, both the Plan itself and the SPDs state that the Trustees may amend the Plan "at any time." The sole express exception to this amending power is that no amendment may reduce

-7-

an accrued benefit. The contractual question, therefore, becomes: did the amendment reduce an accrued benefit? And the answer to that question, in turn, depends on a series of linked definitions that are given in the Plan. We examine these in detail.

(1) The Plan says, first, that an amendment that reduces a retirement-type subsidy is treated as reducing an accrued benefit. (2) It goes on to define "a retirement-type subsidy [as] a subsidy that continues after retirement," but makes clear that such a retirement-type subsidy "does not include a qualified disability benefit (within the meaning of Section 411(a) (9) of the Code)." (3) That section of the Internal Revenue Code provides that "a qualified disability benefit is a disability benefit provided by a plan which does not exceed the benefit which would be provided for the participant if he separated from the service at normal retirement age." 26 U.S.C. § 411(a)(9)(B).

This latter definition settles the contractual matter before us, for:

(1) The Plan explicitly states that the IRD cannot "exceed the Normal Retirement Pension amount . . . that would be payable if the Participant had attained Normal Retirement Age on the day he became disabled."

(2) This means that the IRD cannot exceed the benefit which would be provided if the participant separated from employment at the normal retirement age.

(3) It follows that the IRD is a qualified disability benefit and is *not* a retirement-type subsidy under the Plan.

(4) A reduction of the IRD therefore does not reduce an accrued benefit.

Because the impermissibility of decreasing an accrued benefit is the only stated exception to the Trustees' power to amend the Plan in the manner here done, and because a reduction in the IRD is not a reduction of an accrued benefit, the unambiguous effect of the Plan's and SPDs' language is that the IRD benefit could be so amended.

Appellants direct our attention to language in a number of Plan documents describing the IRD as a "lifetime" pension or a pension to be paid "for life." We addressed a very similar situation in *Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 99 (2d Cir. 2001), where we said,

> Here, . . . we have SPD language that *both* appears to promise lifetime life insurance coverage at a particular level *and* clearly reserves [the insurer's] right to amend or terminate such coverage. Because the same document that potentially provided the "lifetime" benefits also clearly informed employees that these benefits were subject to modification, we conclude that the language contained in [that document] is not susceptible to an interpretation that promises vested lifetime . . . benefits.

As the district court correctly noted, the "lifetime" language in Plan documents was "merely a factually correct statement of the benefits then provided by the Plan—benefits that were expressly subject to amendment 'at any time.'" *Robinson*, 441 F. Supp. 2d at 431; *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998) ("We see no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change."). Indeed, the "lifetime" language in the Plan is expressly made "subject to the provisions of this Plan," which, of course, include the amendment provisions. Notably, in the context of the IRD, the "lifetime" language *cannot* be taken literally to mean that, once a participant begins to receive IRD benefits, he will necessarily remain entitled to them for the remainder of his life. For example, the IRD clearly ends if the participant ceases to be disabled. And the Plan explicitly states that an IRD recipient may be required to undergo periodic medical examinations in order to provide "evidence of continued entitlement to such benefit." Read in context, then, the "lifetime" language does not give Appellants a contractual and absolute right to continue receiving the IRD for their lives.

III. CONCLUSION

Under *Feifer* and *Abbruscato*, Appellants had no vested contractual right to continue receiving the IRD. Moreover, their claim that applying the earnings limitation to their IRDs violates ERISA's anti-cutback rule has been aptly disposed of by the district court. In light of the failure of those two arguments,[5] Appellants' fiduciary duty argument must fail as well.

Accordingly, the appeal is DISMISSED as to Appellant Donohue and those class members over the age of fifty-five, and the judgment of the district court is AFFIRMED as to Appellant Robinson and all other class members.

---

[5]We decide only the case before us and deal just with the aforementioned amendments to the IRD. We have no occasion to consider, for example, whether ERISA would place restrictions on other types of amendments or would require particular language in SPDs when dealing with changes that could be draconian, e.g., a total elimination of benefits to people who, by joining the Plan, forewent other, guaranteed, benefits. All that is beyond the scope of the present case, and we express no view on it either way.