RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0043p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JAMES R. PRICE,

      *Plaintiff-Appellee*,

    *v.*

BOARD OF TRUSTEES OF THE INDIANA
LABORER'S PENSION FUND; INDIANA
LABORER'S PENSION FUND,

      *Defendants-Appellants.*

No. 11-4126

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:07-cv-00933—Algenon L. Marbley, District Judge.

Argued: December 6, 2012

Decided and Filed:  February 15, 2013

Before:  SUTTON and McKEAGUE; Circuit Judges; and JONKER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** R. Gary Winters, McCASLIN, IMBUS & McCASLIN, Cincinnati, Ohio, for Appellants.  Tony C. Merry, LAW OFFICES OF TONY C. MERRY, LLC, Worthington, Ohio, for Appellee.  **ON BRIEF:** R. Gary Winters, McCASLIN, IMBUS & McCASLIN, Cincinnati, Ohio, for Appellants.  Tony C. Merry, LAW OFFICES OF TONY C. MERRY, LLC, Worthington, Ohio, for Appellee.

    McKEAGUE, J., delivered the opinion of the court, in which SUTTON, J., joined.  JONKER, D. J. (pp. 9–12), delivered a separate dissenting opinion.

---

[*]The Honorable Robert J. Jonker, United States District Judge for the Western District of Michigan, sitting by designation.

1

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge.  James Price filed an ERISA suit against the Board of Trustees of the Indiana Laborer's Pension Fund and the Pension Fund itself after his disability benefits were discontinued.  In a previous published opinion, *Price v. Bd. of Trs. of Ind. Laborer's Pension Fund*, 632 F.3d 288 (6th Cir. 2011), we reversed a decision of the district court after holding that the district court applied the wrong standard of review.  We instructed the district court to review the Board's decision regarding the interpretation of the terms of the Plan and the termination of Price's benefits under an arbitrary and capricious standard.  On remand, the district court failed to look to the terms of the plan but instead found that because the Board's decision letter did not discuss whether the benefits vested, the Board's decision was arbitrary and capricious.

For the reasons set forth herein, we reverse the decision of the district court and remand with instructions to grant judgment in favor of the Board.

**BACKGROUND**

The Indiana State District Counsel of Laborers and Hod Carriers Pension Fund (the "Fund") is a multi-employer employee benefit pension plan established and maintained in accordance with ERISA.[1]  As required by ERISA, the Fund has a written pension plan document (the "Plan"), which sets forth the terms of the benefits provided by the Fund.  The Plan provides that the Fund will be administered by a Board of Trustees (the "Board").  The Board in turn possesses authority to make benefit determinations, interpret the Plan, and amend the Plan. In granting the Board amendment power, Section 15.1 of the Plan specifically states:

———————————

[1]The underlying facts are drawn from our opinion in *Price*, 632 F.3d at 290-91.

Any amendment to the Plan may be made retroactively by the majority action of the Board of Trustees present and voting in order to bring the Plan in compliance with the Act and any subsequent amendments thereto. It is the desire of the Board of Trustees to maintain the Plan as a qualified Plan and Trust under Code sections 401(a) and 501(a).

The Trustees who are present and voting may amend the Plan by majority action. However, no amendment shall be made which results in reduced benefits for any Participant whose rights have already become vested under the provisions of the Plan on the date the amendment is made, except upon the advice and counsel of an enrolled actuary.

James Price began receiving disability benefits under the Plan in 1990, after a series of work-related injuries left him unable to work. Price's benefits were initially approved under the Plan's "Total and Permanent Disability Benefit" category. In 2001, the Fund notified Price that he no longer qualified for benefits under this category, but advised him that he could continue receiving benefits under Article 7A's provisions for "Occupational Disability Benefit." At the time Price began receiving Occupational Disability Benefits, payment of those benefits was limited according to terms set forth in Section 7A.5, which stated that "[t]he Occupational Disability Benefit shall be payable only during continued Occupational Disability and until Early Retirement Age under section 2.1(n)." In 2004, the Board exercised its amendment authority under Plan Section 15.1 and amended Section 7A.5 (the "Amendment") to state the following:

[T]he Occupational Disability Benefit shall be payable only during a Participant's continued Occupational Disability and—

* * *

(b) effective for Occupational Disability Benefits commencing prior to January 1, 2005, for a period not to exceed December 31, 2006, or, if earlier, the Participant's attainment of Early Retirement Age . . . .

Because Price began receiving Occupational Disability Benefits prior to January 1, 2005, his benefits were discontinued after December 31, 2006, according to the Amendment. Price became eligible for early retirement in September 2012.

Price appealed the discontinuation of his Occupational Disability Benefits to the

Board, arguing that the Amendment as applied to him violated ERISA. The Board denied Price's appeal and stated in a written letter to Price's attorney that Occupational Disability Benefits could be amended under the terms of the Plan. Price then filed suit in federal district court under 29 U.S.C. § 1132(a)(1)(B). His complaint alleged that the Amendment violated ERISA because it deprived him of a benefit that had vested as a matter of law.

After a short period of discovery, the parties cross-filed for summary judgment. The district court granted judgment in favor of Price under this court's precedent in *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Yard–Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir. 1983). *Price v. Bd. of Trustees of the Ind. Laborer's Pension Fund*, 2:07–cv–0933, 2009 WL 799639, at *4 (S.D. Ohio Mar. 24, 2009). In separate orders, the district court ordered the Fund to reinstate Price's benefits and pay Price's attorney's fees. The Board and the Fund appealed the decision.

We reversed. *Price v. Bd. of Trustees of the Ind. Laborer's Pension Fund*, 632 F.3d 288 (6th Cir. 2009). We initially determined that the *Yard–Man* inference and the standard for vesting from *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) (en banc), did not apply to this case. *Price*, 632 F.3d at 294-95. We then held that the district court erred by reviewing the Board's decision *de novo*. Because the Board had discretion to interpret the plan, the district court should have reviewed the Board's decision under the arbitrary and capricious standard of review. This review "necessarily entails looking to the terms of the Plan to determine if Price's disability benefits vested, as it is the Plan itself that sets forth the terms by which benefits are conferred, vested, or terminated." *Id.* at 296. We remanded the case for consideration of the reasonableness of "the Board's decision regarding the interpretation of the terms of the Plan and the resulting termination of Price's benefits using the arbitrary and capricious standard." *Id.* at 298.

On remand, the district judge set a new briefing schedule, the parties again made cross-motions for summary judgment, and the district judge again granted judgment in favor of Price. The district judge briefly reviewed the majority and concurring opinions

from our prior decision before stating, "The problem that this Court now faces is that the Board's decision did not include a statement of its reasoning." R. 62, Dist. Ct. Op. & Order at 4, Page ID# 533. The court then briefly addressed the lack of reasoning found in the Board's decision and termination letters, and based on the lack of reasoning in these letters, the district judge concluded that the Board's decision was arbitrary and capricious. The court then found that "[p]laintiff is clearly entitled to a retroactive award of benefits." *Id.* at 6. The district court concluded that it would be unreasonable for the Board to find that the benefit had not vested under ERISA and under the language of the Plan "[f]or the reasons set forth in the Sixth Circuit's concurring opinion." *Id.* At no point did the district judge look to the terms of the plan.

The Board and the Fund appeal the district court's decision and argue that the Board's interpretation was reasonable. We begin by outlining the standard of review, and then turn to whether the Board's decision was arbitrary and capricious based on the Board's interpretation of the terms of the Plan and the resulting termination of Price's benefits.

### STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *Price*, 632 F.3d at 291. "Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* at 291-92 (internal quotation marks and modifications omitted).

As we determined in our prior decision, the Plan gives the Board authority to interpret the terms of the Plan and make benefits determinations. Therefore, we review the Board's decision under the arbitrary and capricious standard of review. "A plan administrator's decision will not be deemed arbitrary and capricious so long as 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 561-62 (6th Cir. 2007) (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)).

The proper inquiry then is whether the Board's *decision* was arbitrary and capricious. When the district court decided the case below, it engaged in the wrong inquiry. The district court asked whether the Board's *decision letters* were arbitrary and capricious because they lacked reasoning. The Board decided that Price's benefits could be terminated through amendment, a decision that necessarily required the Board to determine that Price's benefits had not vested. If this interpretation of the Plan was reasonable, then the Board's decision was not arbitrary and capricious, and the Board would be entitled to judgment as a matter of law. *Price*, 632 F.3d at 296-98; *see also Robinson v. Sheet Metal Workers' Nat'l Pension Fund, Plan A*, 515 F.3d 93, 98-99 (2d Cir. 2008); *Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1345-46 (8th Cir. 1997). With this framework in mind, we move to the question presented by this case.

## ANALYSIS

ERISA does not create a substantive right to welfare benefits—such as occupational disability benefits—nor does ERISA establish a vesting requirement for welfare benefits. *Price*, 632 F.3d at 292. Indeed, a welfare benefit may be terminated at any time so long as the termination is consistent with the terms of the plan. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *Robinson*, 515 F.3d at 98-99; *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003) (holding that a disabled person does not "accrue a right to benefits indefinitely; instead his right to those benefits accrues as the payments become due"); *Hutchins*, 110 F.3d at 1345-46. Welfare benefits vest, if at all, based on the terms of the Plan. *Price*, 632 F.3d at 292.

Therefore, we begin with the terms of the Plan itself. Section 15.1 reads, "Any amendment to the Plan may be made retroactively by the majority action . . . ." In the following paragraph, the Plan states, "[N]o amendment shall be made which results in reduced benefits for any Participant whose rights have already become vested under the provisions of the Plan on the date the amendment is made."

With the actual terms of the Plan in mind, we turn to a hypothetical version of the Plan. If Plan Section 15.1 had slightly different language so that it read, "Any

amendment to the Plan may be made retroactively, *and that is true even with respect to disability benefits after the disability occurs,* by the majority action . . . ," then there would be no doubt that the Board could terminate Price's benefits.[2]  Absent language elsewhere in the Plan that contradicted the right to amend disability benefits, it would be nonsensical to think that disability benefits had vested with this clear reservation of the right to terminate disability benefits after the disability occurs.

The fact that Plan Section 15.1 lacks the specificity of the hypothetical Plan described above does not render the Board's interpretation of the Plan unreasonable. Indeed, the lack of specificity merely creates ambiguity, which renders Section 15.1 capable of multiple interpretations, including an interpretation that permits amendment of disability benefits after the disability occurs.[3]  Without stretching the language of the Plan, the Board, exercising its authority to interpret the plan, could reasonably conclude that "Any amendment" included amendments to disability benefits after the disability occurs.  The Plan has no other language that would render the Board's interpretation unreasonable. *Price*, 632 F.3d at 296-98.  To the contrary as shown in *Price I*, the term "vesting" in the Plan plainly refers to retirement-related, not disability-related, benefits. For these reasons, the Board's interpretation was reasonable, and as a result, the decision was not arbitrary and capricious.  Therefore, the Board is entitled to judgment as a matter of law.

---

[2]In fact, plaintiff's counsel conceded at oral argument that if the provision were this explicit, then the Board could have terminated Price's benefits.

[3]The dissent contends that because Section 15.1 only discusses retroactive amendment "in order to bring the Plan in compliance with the Act," "it was arbitrary and capricious to terminate the benefit award based on retroactive application of the Plan amendment." However, by determining that the amendment was retroactive, the dissent illustrates the fundamental distinction between our two opinions.

In our view, the 2004 amendment was not retroactive—retroactive amendments are those that affect a party's expectation to a vested or accrued benefit. *See, e.g.*, *Central Laborer's Pension Fund v. Heinz*, 541 U.S. 739, 743-45 (2004); *Filipowicz v. American Stores Benefit Plans*, 56 F.3d 807, 815 (7th Cir. 1995). On the other hand, an amendment is not retroactive where, as here, the amendment merely changes the prospective application of a non-vested welfare benefit. *See, e.g.*, *Owens v. Storehouse, Inc.*, 984 F.2d 394, 397 (11th Cir. 1993); *McGann v. H & H Music Co.*, 946 F.2d 401, 405 (5th Cir. 1991). The plan hypothetical outlined above merely makes the point that, if the Plan included the additional language, the Plan would unambiguously indicate that the disability benefits did not vest, which corroborates our conclusion that the Board's interpretation was reasonable.  As the Plan amendment at issue was not retroactive, the first paragraph of Section 15.1 does not render the Board's interpretation arbitrary and capricious, and the Board could deny Price disability benefits by amending the Plan through the second paragraph of Section 15.1.

## CONCLUSION

We therefore **REVERSE** the decision of the district court, and **REMAND** with instructions to enter judgment for the defendants.

———————————

**DISSENT**

———————————

JONKER, District Judge, dissenting.  In *Price I*, I stated that I would affirm the District Court's original decision under the standard articulated in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), because the decision to terminate benefits was arbitrary and capricious.  *Price v. Bd. of Trs. of the Ind. Laborer's Pension Fund*, 632 F.3d 288, 298 (2011).  I continue to hold that view, and therefore respectfully dissent.

This case involves a decision to terminate disability benefits that had already been awarded, not a decision to grant or deny benefits in the first instance.  Moreover, everyone agrees that the beneficiary—Mr. Price—remains disabled, just as he was when the Plan decided to award benefits to him.  All agree that Mr. Price originally qualified for and received an award of complete disability benefits in 1990.  The Plan in effect at that time by its terms promised to pay the benefits until early retirement age, provided the qualifying participant remained disabled.  All agree that Mr. Price qualified for and received an award of occupational disability benefits in 2001.  The Plan at that time by its terms also promised to pay the benefits until early retirement age, provided Mr. Price remained disabled.  All agree that on January 1, 2007, when the Plan unilaterally stopped paying Mr. Price the promised disability benefits, Mr. Price remained disabled and had not reached early retirement age.  In my view, this means the Plan decision to stop paying the previously awarded benefits was arbitrary and capricious.

The Plan apparently terminated the benefits based solely on an amendment it adopted to cut off certain benefits effective December 31, 2006.  The Plan adopted the amendment after the disability award to Mr. Price, but decided to apply the amendment retroactively, terminating the  benefits it previously awarded under the Plan promising benefits to early retirement.  Certainly the Plan has the power to change prospectively the terms on which it offers benefits to Plan participants who have not qualified to receive those benefits.  But it is, in my view, arbitrary and capricious for the Plan to

terminate benefits that have already been awarded based on a retroactive benefit-stripping amendment. At oral argument, all parties agreed that such a retroactive amendment to the Plan could not lawfully operate to deny or terminate death benefits payable under the Plan. I believe the same is true for disability benefits under the same Plan.

The Plan administrator's decision to the contrary is arbitrary and capricious for multiple reasons.

First, the result itself defeats the very purpose of disability benefits. A person participates in a disability plan—whether a disability insurance plan, a multi-employer plan, or otherwise—specifically to ensure a reliable income stream during a period of covered disability. If a plan may unilaterally terminate already-awarded benefits while the participant remains disabled, the plan provides no meaningful protection. Everyone agrees that death benefits already awarded cannot be undone in this fashion under the Plan. The same logic should apply to disability benefits under the same Plan. There is no functional distinction between a disability benefit package payable under the Plan terms in effect at the time of disability, and a death benefit package, whether paid out in a lump sum or over a fixed period of time under the same Plan. In both cases, once the person is actually dead or disabled, there is no way to cover the risk through the purchase of alternative coverage. This leaves the participant without the promised plan benefit and without the ability to cover the risk in some other way. That is exactly what happened to Mr. Price here: by the time the Plan cut off his already-awarded benefits based on the retroactive amendment, it was too late to apply for Social Security disability benefits, and it was impossible to get private disability coverage because—as all agree— he was and remains disabled. This means he will have to bear the economic loss of almost six years of lost disability protection—from the arbitrary December 31, 2006 cut-off date to his early retirement date of September 2012.

Second, the decision to discontinue Mr. Price's benefits results, in my view, from the application of the wrong Plan document. The Plan in effect at the time the benefits were awarded, not a later plan imposing new terms, should govern. I acknowledge broad

language in some out-of-circuit case law that would, at first glance, appear to hold to the contrary. *See, e.g.*, *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003) ("[A]bsent any language suggesting ambiguity on the vesting question, the controlling plan must be the plan in effect at the time the benefits were denied."). But on closer examination, I do not believe the case law suggests – much less compels – such a result. This case does not involve an initial decision to grant or deny a benefit, or a post-award determination of a change in disability status, as in *Hackett*, but rather a decision to terminate a disability benefit previously awarded despite ongoing satisfaction of the disability requirement. In fact, the Seventh Circuit itself suggested this distinction in a later decision commenting on *Hackett*. *Huss v. IBM Medical and Dental Plan*, 418 F. App'x 498, 2011 WL 1388543, *5 (7th Cir. April 13, 2011) (explicitly limiting *Hackett* and holding that for a decision denying benefits based on failure to satisfy a condition precedent to be reasonable, the decision must be based on the plan language in effect at the time the opportunity to fulfill the condition precedent expired, not a later iteration of the plan); *see also Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 831 (7th Cir. 2004) ("An ERISA benefit cannot be a moving target where the plan administrator continues to add conditions precedent to the award of benefits."). The Plan document in effect at the time of the original benefit award establishes the reasonable expectations of the parties, including their expectations concerning the duration of the award. Under the terms of each Plan in effect at the time Mr. Price qualified for and was awarded disability benefits, the duration of the benefits was clear: until early retirement, provided he remained disabled, as all agree he is. That is the Plan document that logically must define and limit the rights and duties of the parties as the benefit package is fulfilled during Mr. Price's ongoing disability.

Finally, even if the Plan administrator properly relied on the Plan document in effect at the time the Plan discontinued Mr. Price's benefits, it was arbitrary and capricious to terminate the benefits award based on retroactive application of the Plan amendment. The Plan language itself supports this position. The Plan permits *retroactive* amendment for one limited purpose: "[a]ny amendment to the Plan may be made retroactively by the majority action of the Board of Trustees present and voting *in*

*order to bring the Plan in compliance with the Act [ERISA] and any subsequent amendments thereto*." (emphasis added). No one is claiming that the purpose of the amendment here was to comply with ERISA, yet that is by the express terms of the Plan the only possible basis for a retroactive amendment. The Plan's only other amendment provision makes no reference to retroactivity and actually underscores a concern to avoid benefit reduction—let alone benefit-stripping—amendments: "[N]o amendment shall be made which results in reduced benefits for any Participant whose rights have already become vested under the provisions of the Plan on the date the amendment is made, except upon the advice and counsel of an enrolled actuary." No one claims the amendment here satisfies the "advice and counsel of an enrolled actuary" limitation either. Here, the Plan applied a benefit-stripping amendment retroactively to cut off the disability benefits previously awarded to Mr. Price, even though the Plan does not by its terms permit retroactive amendments for that purpose.

No other court has, to my knowledge, confronted this particular scenario, but at least two Circuits have commented in dicta that such a benefit-stripping amendment would create concern. *See Robinson v. Sheet Metal Workers' Nat'l Pension Fund*, 515 F.3d 93, 98 n.5 (2d Cir. 2008) (questioning "whether ERISA would place restrictions on . . . amendments or would require particular language in SPD's when dealing with changes that could be draconian, e.g., a total elimination of benefits to people who, by joining the Plan, forewent other, guaranteed, benefits."); *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 n.6 (5th Cir. 2004) ("[W]e need not and do not go so far as to say that it would have been acceptable for [Defendant] to have simply ended the benefit program so that [Plaintiff] would be entitled to no post August 1995 benefits whatsoever even if she were concededly disabled as defined in the plan."). This is such a benefit-stripping case, and I would hold that the Plan's application of a retroactive benefit-stripping amendment was arbitrary and capricious.

Accordingly, I would affirm the District Court's decision, and would find the Plan's reliance on a retroactive, benefit-stripping amendment arbitrary and capricious.