McKEAGUE, J., delivered the opinion of the court, in which SUTTON, J., joined. JONKER, D.J. (pp. 652-55), delivered a separate dissenting opinion.
OPINION
McKEAGUE, Circuit Judge.
James Price filed an ERISA suit against the Board of Trustees of the Indiana Laborer’s Pension Fund and the Pension Fund itself after his disability benefits were discontinued. In a previous published opinion, Price v. Bd. of Trs. of Ind. Laborer’s Pension Fund, 632 F.3d 288 (6th Cir.2011), we reversed a decision of the district court after holding that the district court applied the wrong standard of review. We instructed the district court to review the Board’s decision regarding the interpretation of the terms of the Plan and the termination of Price’s benefits under an arbitrary and capricious standard. On remand, the district court failed to look to the terms of the plan but instead found that because the Board’s decision letter did not discuss whether the benefits vested, the Board’s decision was arbitrary and capricious.
For the reasons set forth herein, we reverse the decision of the district court and remand with instructions to grant judgment in favor of the Board.
*649 BACKGROUND
The Indiana State District Counsel of Laborers and Hod Carriers Pension Fund (the “Fund”) is a multi-employer employee benefit pension plan established and maintained in accordance with ERISA.[1] As required by ERISA, the Fund has a written pension plan document (the “Plan”), which sets forth the terms of the benefits provided by the Fund. The Plan provides that the Fund will be administered by a Board of Trustees (the “Board”). The Board in turn possesses authority to make benefit determinations, interpret the Plan, and amend the Plan. In granting the Board amendment power, Section 15.1 of the Plan specifically states:
Any amendment to the Plan may be made retroactively by the majority action of the Board of Trustees present and voting in order to bring the Plan in compliance with the Act and any subsequent amendments thereto. It is the desire of the Board of Trustees to maintain the Plan as a qualified Plan and Trust under Code sections 401(a) and 501(a).
The Trustees who are present and voting may amend the Plan by majority action. However, no amendment shall be made which results in reduced benefits for any Participant whose rights have already become vested under the provisions of the Plan on the date the amendment is made, except upon the advice and counsel of an enrolled actuary.
James Price began receiving disability benefits under the Plan in 1990, after a series of work-related injuries left him unable to work. Price’s benefits were initially approved under the Plan’s “Total and Permanent Disability Benefit” category. In 2001, the Fund notified Price that he no longer qualified for benefits under this category, but advised him that he could continue receiving benefits under Article 7A’s provisions for “Occupational Disability Benefit.” At the time Price began receiving Occupational Disability Benefits, payment of those benefits was limited according to terms set forth in Section 7A.5, which stated that “[t]he Occupational Disability Benefit shall be payable only during continued Occupational Disability and until Early Retirement Age under section 2.1(n).” In 2004, the Board exercised its amendment authority under Plan Section 15.1 and amended Section 7A.5 (the “Amendment”) to state the following:
[T]he Occupational Disability Benefit shall be payable only during a Participant’s continued Occupational Disability and—
(b) effective for Occupational Disability Benefits commencing prior to January 1, 2005, for a period not to exceed December 31, 2006, or, if earlier, the Participant’s attainment of Early Retirement Age....
Because Price began receiving Occupational Disability Benefits prior to January 1, 2005, his benefits were discontinued after December 31, 2006, according to the Amendment. Price became eligible for early retirement in September 2012.
Price appealed the discontinuation of his Occupational Disability Benefits to the Board, arguing that the Amendment as applied to him violated ERISA. The Board denied Price’s appeal and stated in a written letter to Price’s attorney that Occupational Disability Benefits could be amended under the terms of the Plan. Price then filed suit in federal district court under 29 U.S.C. § 1132(a)(1)(B). His complaint alleged that the Amendment vio *650 lated ERISA because it deprived him of a benefit that had vested as a matter of law.
After a short period of discovery, the parties cross-filed for summary judgment. The district court granted judgment in favor of Price under this court’s precedent in Int’l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Yard-Man, Inc., 716 F.2d 1476, 1482 (6th Cir.1983). Price v. Bd. of Trustees of the Ind. Laborer’s Pension Fund, 2:07-cv-0933, 2009 WL 799639, at *4 (S.D.Ohio Mar. 24, 2009). In separate orders, the district court ordered the Fund to reinstate Price’s benefits and pay Price’s attorney’s fees. The Board and the Fund appealed the decision.
We reversed. Price v. Bd. of Trustees of the Ind. Laborer’s Pension Fund, 632 F.3d 288 (6th Cir.2011). We initially determined that the Yard-Man inference and the standard for vesting from Sprague v. General Motors Corp., 133 F.3d 388, 400 (6th Cir.1998) (en banc), did not apply to this case. Price, 632 F.3d at 294-95. We then held that the district court erred by reviewing the Board’s decision de novo. Because the Board had discretion to interpret the plan, the district court should have reviewed the Board’s decision under the arbitrary and capricious standard of review. This review “necessarily entails looking to the terms of the Plan to determine if Price’s disability benefits vested, as it is the Plan itself that sets forth the terms by which benefits are conferred, vested, or terminated.” Id. at 296. We remanded the case for consideration of the reasonableness of “the Board’s decision regarding the interpretation of the terms of the Plan and the resulting termination of Price’s benefits using the arbitrary and capricious standard.” Id. at 298.
On remand, the district judge set a new 'briefing schedule, the parties again made cross-motions for summary judgment, and the district judge again granted judgment in favor of Price. The district judge briefly reviewed the majority and concurring opinions from our prior decision before stating, “The problem that this Court now faces is that the Board’s decision did not include a statement of its reasoning.” R. 62, Dist. Ct. Op. & Order at 4, Page ID# 533. The court then briefly addressed the lack of reasoning found in the Board’s decision and termination letters, and based on the lack of reasoning in these letters, the district judge concluded that the Board’s decision was arbitrary and capricious. The court then found that “[pjlaintiff is clearly entitled to a retroactive award of benefits.” Id. at 6. The district court concluded that it would be unreasonable for the Board to find that the benefit had not vested under ERISA and under the language of the Plan “[fjor the reasons set forth in the Sixth Circuit’s concurring opinion.” Id. At no point did the district judge look to the terms of the plan.
The Board and the Fund appeal the district court’s decision and argue that the Board’s interpretation was reasonable. We begin by outlining the standard of review, and then turn to whether the Board’s decision was arbitrary and capricious based on the Board’s interpretation of the terms of the Plan and the resulting termination of Price’s benefits.
STANDARD OF REVIEW
We review the district court’s grant of summary judgment de novo. Price, 632 F.3d at 291. “Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Id. at 291-92 (internal quotation marks and modifications omitted).
*651 As we determined in our prior decision, the Plan gives the Board authority to interpret the terms of the Plan and make benefits determinations. Therefore, we review the Board’s decision under the arbitrary and capricious standard of review. “A plan administrator’s decision will not be deemed arbitrary and capricious so long as ‘it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.’ ” Haus v. Bechtel Jacobs Co., LLC, 491 F.3d 557, 561-62 (6th Cir.2007) (quoting Davis v. Ky. Fin. Cos. Ret. Plan, 887 F.2d 689, 693 (6th Cir.1989)).
The proper inquiry then is whether the Board’s decision was arbitrary and capricious. When the district court decided the case below, it engaged in the wrong inquiry. The district court asked whether the Board’s decision letters were arbitrary and capricious because they lacked reasoning. The Board decided that Price’s benefits could be terminated through amendment, a decision that necessarily required the Board to determine that Price’s benefits had not vested. If this interpretation of the Plan was reasonable, then the Board’s decision was not arbitrary and capricious, and the Board would be entitled to judgment as a matter of law. Price, 632 F.3d at 296-98; see also Robinson v. Sheet Metal Workers’ Nat’l Pension Fund, Plan A, 515 F.3d 93, 98-99 (2d Cir.2008); Hutchins v. Champion Int’l Corp., 110 F.3d 1341, 1345-46 (8th Cir.1997). With this framework in mind, we move to the question presented by this case.
ANALYSIS
ERISA does not create a substantive right to welfare benefits — such as occupational disability benefits — nor does ERISA establish a vesting requirement for welfare benefits. Price, 632 F.3d at 292. Indeed, a welfare benefit may be terminated at any time so long as the termination is consistent with the terms of the plan. Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); Robinson, 515 F.3d at 98-99; Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 774 (7th Cir.2003) (holding that a disabled person does not “accrue a right to benefits indefinitely; instead his right to those benefits accrues as the payments become due”); Hutchins, 110 F.3d at 1345-46. Welfare benefits vest, if at all, based on the terms of the Plan. Price, 632 F.3d at 292.
Therefore, we begin with the terms of the Plan itself. Section 15.1 reads, “Any amendment to the Plan may be made retroactively by the majority action____” In the following paragraph, the Plan states, “[N]o amendment shall be made which results in reduced benefits for any Participant whose rights have already become vested under the provisions of the Plan on the date the amendment is made.”
With the actual terms of the Plan in mind, we turn to a hypothetical version of the Plan. If Plan Section 15.1 had slightly different language so that it read, “Any amendment to the Plan may be made retroactively, and that is true even with respect to disability benefits after the disability occurs, by the majority action ...,” then there would be no doubt that the Board could terminate Price’s benefits.[2] Absent language elsewhere in the Plan that contradicted the right to amend disability benefits, it would be nonsensical to think that disability benefits had vested with this clear reservation of the right to terminate disability benefits after the disability occurs.
*652 The fact that Plan Section 15.1 lacks the specificity of the hypothetical Plan described above does not render the Board’s interpretation of the Plan unreasonable. Indeed, the lack of specificity merely creates ambiguity, which renders Section 15.1 capable of multiple interpretations, including an interpretation that permits amendment of disability benefits after the disability occurs.[3] Without stretching the language of the Plan, the Board, exercising its authority to interpret the plan, could reasonably conclude that “Any amendment” included amendments to disability benefits after the disability occurs. The Plan has no other language that would render the Board’s interpretation unreasonable. Price, 632 F.3d at 296-98. To the contrary as shown in Price I, the term “vesting” in the Plan plainly refers to retirement-related, not disability-related, benefits. For these reasons, the Board’s interpretation was reasonable, and as a result, the decision was not arbitrary and capricious. Therefore, the Board is entitled to judgment as a matter of law.
CONCLUSION
We therefore REVERSE the decision of the district court, and REMAND with instructions to enter judgment for the defendants.

. The underlying facts are drawn from our opinion in Price, 632 F.3d at 290-91.

. In fact, plaintiff's counsel conceded at oral argument that if the provision were this explicit, then the Board could have terminated Price's benefits.

. The dissent contends that because Section 15.1 only discusses retroactive amendment “in order to bring the Plan in compliance with the Act,” “it was arbitrary and capricious to terminate the benefit award based on retroactive application of the Plan amendment.” However, by determining that the amendment was retroactive, the dissent illustrates the fundamental distinction between our two opinions.
In our view, the 2004 amendment was not retroactive — retroactive amendments are those that affect a party’s expectation to a vested or accrued benefit. See, e.g., Central Laborers' Pension Fund v. Heinz, 541 U.S. 739, 743-45, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004); Filipowicz v. American Stores Benefit Plans, 56 F.3d 807, 815 (7th Cir.1995). On the other hand, an amendment is not retroactive where, as here, the amendment merely changes the prospective application of a non-vested welfare benefit. See, e.g., Owens v. Storehouse, Inc., 984 F.2d 394, 397 (11th Cir.1993); McGann v. H & H Music Co., 946 F.2d 401, 405 (5th Cir.1991). The plan hypothetical outlined above merely makes the point that, if the Plan included the additional language, the Plan would unambiguously indicate that the disability benefits did not vest, which corroborates our conclusion that the Board's interpretation was reasonable. As the Plan amendment at issue was not retroactive, the first paragraph of Section 15.1 does not render the Board’s interpretation arbitrary and capricious, and the Board could deny Price disability benefits by amending the Plan through the second paragraph of Section 15.1.