*Gluckman v. Commissioner of Internal Revenue*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of November, two thousand thirteen.

PRESENT:

JOHN M. WALKER, JR.,
JOSÉ A. CABRANES,
BARRINGTON D. PARKER,
   *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

THOMAS S. GLUCKMAN and ROBY R. GLUCKMAN,

  *Petitioners-Appellants,*

  -v.-                 No. 13-761

COMMISSIONER OF INTERNAL REVENUE,

  *Respondent-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR PLAINTIFFS-APPELLANTS:**   KATHLEEN R. BARROW, (Heather C. Panick, Christian, Smith and Jewell, LLP, Houston, TX; Mark Allison, Caplin Drysdale, New York, NY, *on the brief*) Jackson Lewis LLP, Omaha, NE.

1

**FOR DEFENDANT-APPELLEE:** KENNETH L. GREENE (Theresa T. Milton, *on the* brief) for Kathryn Keneally, Assistant Attorney General, Department of Justice, Tax Division, Washington, DC.

Appeal from the December 17, 2012 judgment of the United States Tax Court (Mary Ann Cohen, *Judge*).[1]

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the December 17, 2012 judgment of the Tax Court be **AFFIRMED**.

Appellants Thomas Gluckman and Roby Gluckman (the "Gluckmans") appeal from the December 17, 2012 Order of the Tax Court affirming the Tax Commissioner's ("Commissioner") assessment of a Federal income tax deficiency for the year 2003 of $754,653, and an accuracy-related penalty under 26 U.S.C. § 6662 of $150,930.60 based on the Gluckmans' failure to report as income the value of certain life insurance policies upon withdrawal of those policies from a "10 or more employer" welfare benefit plan under Internal Revenue Code ("Code") § 419A(f)(6). *Gluckman v. Commissioner*, T.C.M. 2012-329, 2012 WL 5951351 (Nov. 28, 2012) ("Tax Op.").

## BACKGROUND[2]

Familiarity with the factual and procedural background of this case is presumed, and only limited details are repeated here. The Gluckmans are a married couple and were, at all relevant times, employees and majority shareholders of Fownes Brothers & Co., Inc. ("Fownes"), a clothing accessories manufacturer.[3] Thomas Gluckman ("Gluckman") was president and director of Fownes.

In December 1999, Fownes, at the direction of the Gluckmans, adopted the Advantage Death Benefit Plan and Trust ("Advantage Plan" or "Plan"), a "10 or more employer" welfare benefit plan under Code section 419A(f)(6), which offered preretirement life insurance to employees on a tax deductible basis. The Plan was not a tax-exempt trust. Participating employers could terminate participation at any time.[4] As of 2000, the Gluckmans were both covered employees.

---

[1] The Order and Decision in this case was originally entered on December 4, 2012 but was vacated and set aside due to a clerical error and replaced by the December 17, 2012 Order.

[2] This case was submitted on a stipulated record pursuant to Tax Court Rule 122.

[3] The Gluckmans each owned 28.94% of the Fownes stock and the remainder of stock was shared equally by the Gluckmans' two children.

[4] In the event of a termination by a participating employer, the plan trustee was required to value the portion of the trust attributable to benefits funded by the withdrawing employer and ensure that the employer's share of expenses and liabilities was paid. The trustee was then required to offer the insurance policies to the covered employees on whose lives those policies were issued. Alternatively, the trustee could distribute the policies to covered employees or successor plans providing "similar benefits." App'x 90-91.

In 2002, the Internal Revenue Service issued proposed regulations regarding the meaning of "10 or more employer" welfare benefit plans under which the Advantage Plan would no longer qualify. As a result, the administrator of the Advantage Plan, BISYS Insurance Services, Inc. ("BISYS"), decided to terminate the Plan effective December 31, 2003. In a May 14, 2003 letter, BISYS notified Fownes of its intention to terminate the Plan. BISYS advised employers to voluntarily terminate their participation in the Plan prior to December 31, 2003 and notified them of two options upon termination: (1) "roll[] out" the policies to the employees who would then be taxed; or (2) "roll[] out" the policies to the employees who would then be taxed, after which the employer could adopt the Advantage DBO Plan and the policies could be used as a funding vehicle for the Advantage DBO Plan. Tax Op. at 7. The letter stated that "a trustee-to-trustee transfer (i.e. from The Advantage Plan to another welfare benefit plan such as The DBO Plan) is not permitted under the applicable IRS regulations." *Id.*

On October 17, 2003, BISYS acknowledged Fownes's intention to terminate participation in the Advantage Plan, and requested a copy of the corporate resolution necessary to terminate participation. In response, Fownes submitted an October 24, 2003 corporate resolution authorizing a "complete distribution" of the policies to take effect on November 28, 2003. The resolution was signed by affected participants, including the Gluckmans, each of whom waived the right to purchase the underlying policies. BISYS then forwarded to Fownes the change of ownership forms, which listed the Advantage Plan trustee as the "current owner" of the life insurance policies. BISYS instructed Gluckman to fill out the new owner information and endorsement and send the forms to the insurance carrier.

Sometime in October 2003, the Gluckmans learned of a new, qualified "10 or more employer" welfare benefit plan called the Millennium Multiple Employer Welfare Benefit Plan (the "Millennium Plan"). On December 17, 2003, Gluckman signed an agreement providing that Fownes would participate in the Millennium Plan. The Change of Ownership forms listed the Millennium Plan as the new owner of the insurance policies, as of January 22, 2004.[5] On February 9, 2004, the issuing insurance company acknowledged the change of ownership, and BISYS notified taxpayers that they would be receiving information about their tax obligations in connection with the termination from the Advantage Plan.

The Gluckmans did not include as income in 2003 the value of the underlying life insurance policies. *See* App'x 61-79.

---

[5] The Gluckmans were not named as owners of the life insurance policies until they purchased the policies from the Millennium Plan in 2011.

## DISCUSSION

We review a decision of the tax court based on a stipulated record *de novo*. *See Robinson v. Sheet Metal Workers' Nat'l Pension Fund, Plan A*, 515 F.3d 93, 98 (2d Cir. 2008) (discussing district court review); 26 U.S.C. § 7482(a)(1) (Tax Court decisions are to be reviewed "in the same manner and to the same extent as decisions of the district courts").[6]

### A. Deficiency

The Tax Court found that in 2003 the Gluckmans's interest in the policies was "substantially vested" within the meaning of the Code, and therefore required to be included as income.[7] Tax Op. at \*21. Specifically, once Fownes authorized withdrawal from the Advantage Plan, the "underlying policies were substantially certain to be distributed to petitioners or placed within their control," and, more importantly, "were placed within petitioners' control no later than early November 2003." *Id.* at \*16. The Tax Court rejected the argument that the policies were "at all times owned by a welfare benefit plan and subject to a substantial risk of forfeiture," *id.* at \*18, as well as the argument that the Fownes board of directors, not the Gluckmans, had control over the disposition of the policies, *id.* at \*21. We agree.

After Fownes withdrew from the Advantage Plan, BISYS provided Fownes, which was controlled by the Gluckmans,[8] with the change of ownership and change of beneficiary forms, giving the Gluckmans the "ability to name themselves or another welfare benefit plan as the owner and beneficiary of the underlying policies." *Id.* at \*19. That the Gluckmans chose to name a different welfare benefit plan as the new owner of the policies does not negate the fact that the Gluckmans had the ability to name themselves or anyone else as owners. The Gluckmans have not established that anyone else exercised or could have exercised authority over the use or distribution of the policies following the formal termination from the Advantage Plan. Indeed, BISYS informed

---

[6] *But see Scheidelman v. Commissioner*, 682 F.3d 189, 193 (2d Cir. 2012) (mixed questions of law and fact in tax cases are reviewed for clear error). Because the standard of review does not govern the outcome of this case it is unnecessary to resolve any tension between these two standards here.

[7] The Advantage Plan, a non-exempt trust, is governed by Internal Revenue Code ("Code") section 402(b)(1) which provides that an employee "must include in gross income the value of her interest in a nonexempt trust in the first taxable year in which that interest becomes substantially vested." The governing IRS regulation provides, in relevant part, "[i]f rights of an employee under a trust become substantially vested during a taxable year of the employee . . . the value of the employee's interest in the trust on the date of such change shall be included in his gross income for such taxable year . . . ." 26 C.F.R. § 1.402(b)–1(b)(2). An employee's interest is "substantially vested" when it is "either transferable or not subject to a substantial risk of forfeiture." *Id.* § 1.83–3(b). A substantial risk of forfeiture exists where property rights "are conditioned, directly or indirectly, upon the future performance . . . of substantial services by any person, or the occurrence of a condition related to a purpose of the transfer, and the possibility of forfeiture is substantial if such condition is not satisfied." *Id.* § 1.83-3(c).

[8] The Gluckmans do not seriously dispute that they exercised control over Fownes, nor could they plausibly do so in view of their status as majority shareholders, and Thomas Gluckman's position as President.

the Gluckmans in the October letter acknowledging Fownes's withdrawal that the Advantage Plan was "not responsible for the payment of any death benefit, interest of proceeds of any sort associated with your participation in the Plan and Trust." App'x 133.[9] We agree that at this point in 2003 the policies were not subject to a substantial risk of forfeiture. Accordingly, we affirm the decision of the District Court.

## B. Accuracy-Related Penalty

The Tax Court affirmed the Commissioner's assessment of a twenty percent "accuracy-related penalty" against the Gluckmans for underpayment attributable to "substantial understatement of income tax." 26 U.S.C. § 6662(b)(2). An understatement of income tax is substantial if it exceeds the greater of ten percent of the tax required to be shown, or $5,000. Section 6662(d)(1)(A). Although the Gluckmans could have rebutted the assessment of the penalty by providing evidence that the underpayment was made in "good faith" and with "reasonable cause," *id.* § 6664(c)(1), they produced no evidence with respect to the defenses of reasonable cause or good faith before the Tax Court, *Gluckman*, T.C.M. 2012-329 at *22, or, for that matter, on appeal. Accordingly, we affirm the penalty for the reasons stated in the Tax Court's Memorandum Opinion.

## CONCLUSION

We have reviewed the record and the parties' arguments on appeal. For the reasons set out above, we **AFFIRM** the December 17, 2012 judgment of the Tax Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

---

[9] The Gluckmans assert that, throughout 2003, BISYS maintained "the right to surrender the policies, borrow against the policies, assign or transfer the policies, and name or change beneficiaries." Appellants' Br. 40.

5