In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-4132

JAMES J. HACKETT,

*Plaintiff-Appellant,*

*v.*

XEROX CORPORATION LONG-TERM DISABILITY INCOME PLAN,
XEROX CORPORATE REVIEW DISABILITY PANEL, PLAN
ADMINISTRATOR, for the Xerox Corporation Long-Term
Disability Plan, and HEALTH INTERNATIONAL, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00C3140—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED OCTOBER 30, 2002—DECIDED JANUARY 6, 2003

Before FLAUM, *Chief Judge,* and BAUER and DIANE P.
WOOD, *Circuit Judges.*

FLAUM, *Chief Judge.* James Hackett claims that the
defendants (collectively "Xerox"), who are responsible for
administering Xerox's Long-Term Disability Plan ("the
Plan"), violated the Employee Retirement Income Secu-
rity Act ("ERISA"), 29 U.S.C. §1001 et seq., when they ter-
minated his long-term disability benefits. The district
court denied Hackett's motion for summary judgment
and granted Xerox's motion for summary judgment. Hackett

appeals. For the reasons stated herein, we reverse and remand to the district court.

## I. Background

James Hackett has worked for Xerox since 1985. Hackett began to suffer from emotional problems in 1986. These problems were caused by a personality disorder that made it difficult for him to interact properly with others in the work environment. After these problems worsened, Hackett was advised by a Xerox physician to seek disability benefits under the Xerox Long-Term Disability Plan. In the process Hackett was examined by his psychiatrist, Dr. Gerber, who diagnosed Hackett as suffering from a serious psychiatric condition that prevented him from doing any type of work. Hackett began receiving benefits on March 2, 1987.

Subsequent to the grant of benefits, Xerox encouraged Hackett to apply for Social Security disability benefits and those benefits were granted.[1] Additionally, in the first decade following the grant of benefits, Hackett was examined by numerous experts, all of whom reached the conclusion that Hackett was unable to work. As a result of these examinations Hackett's benefits were continued. This state of affairs continued until 1998 when Xerox asked Hackett to be examined by Dr. Holeman. Dr. Holeman, after examining Hackett and later reviewing the prior findings of the other doctors, noted that Hackett suffered from a personality disorder but found Hackett able to return to work without restriction. As a result of Dr. Holeman's opinion Xerox terminated benefits in January 1999. The reason given for termination was, "Contin-

---

[1] Because Hackett received payments from Social Security, Xerox's liability was reduced.

ued Disability not clinically supported." Hackett appealed the termination. Xerox then had Hackett's medical record reviewed by Dr. Wolf, who concluded that Hackett could return to work, but not in sales. Xerox, based on Dr. Wolf's review, denied Hackett's appeal. The denial of appeal contained the same explanation as the original termination: "Continued Disability not clinically supported." While the review was underway Dr. Gerber sent in a report from an evaluation of Hackett conducted on March 28, 1999. Dr. Wolf reviewed this letter after his initial determination; but his conclusion did not change. Xerox advised Hackett of this. This time Xerox listed the reason for termination as, "Consulting Physician did not concur."

Hackett brought suit challenging the termination. The district court denied Hackett's motion for summary judgment and then granted Xerox's motion for summary judgment. Hackett appeals.

## II. Discussion

We review a district court's grant of summary judgment *de novo*. *O'Reilly v. Hartford Life & Accident Insurance Co.*, 272 F.3d 955, 959 (7th Cir. 2001).

### a. Standard of Reviewing the Decision to Terminate

A court reviews a plan administrator's denial of benefits *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000). Where the plan does grant discretionary authority to the administrator, the court reviews the decision under the arbitrary and capricious standard. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

In 1996 Xerox adopted a new long-term disability plan, amending its 1977 plan by granting the disability administrator the sole discretion in determining whether an employee meets the conditions for receiving benefits. The parties agree that the 1977 plan contains no language granting discretionary authority to the plan administrator; they also agree that the 1996 plan explicitly grants such discretion.[2] The disagreement is over which plan controls the decision to terminate Hackett's benefits.

Though we have not directly addressed the question of how to determine what plan controls a denial or termination of benefits, our decisions on closely related questions are instructive. This court has held that there exists a presumption against the vesting of benefits unless language in the plan establishes some ambiguity on the issue. *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 544 (7th Cir. 2000). If benefits have not vested, the plan participant does not have an unalterable right to those benefits. The fact that benefits have not vested suggests that the plan is malleable and the employer is at liberty to change the plan and thus change the benefits to which a participant is entitled. Since the employer can change the plan, then it must follow that the controlling plan will be the plan that is in effect at the time a claim for benefits accrues. *See*, *e.g.*, *Grosz-Salomon v. Paul Revere Life Insurance Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001) (applying this logic and reaching the same conclusion). We have held that a claim accrues at the time benefits are denied. *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996). Therefore, absent any language suggesting ambiguity on

---

[2] The 1996 plan reads: "The determination of whether an Employee has incurred a covered disability and has complied with all of the conditions for receiving, and continuation of, benefits shall be made by either the Medical Case Manager or the Disability Administrator, as appropriate, in its sole discretion."

the vesting question, the controlling plan must be the plan in effect at the time the benefits were denied.

Hackett claims that the original plan contains language that overrides the presumption against vesting. He therefore argues that his right to benefits did in fact vest prior to the 1996 plan. He supports this claim by reference both to the 1977 plan and a 1987 personnel manual. Hackett correctly notes that the 1977 plan makes clear that it cannot be amended in a way that would "diminish any rights accrued for the benefit of the participants prior to the effective date of the amendment." But this does not add support to Hackett's arguments. Rights to benefits do not accrue prospectively. Hackett did not, upon initial determination of eligibility, accrue a right to benefits indefinitely; instead his right to those benefits accrues as the payments become due. *Cf. Arndt v. Security Bank S.S.B. Employees' Pension Plan*, 182 F.2d 538 (7th Cir. 1999). As a result the provision referenced by Hackett in this context only says that no amendment shall require Hackett to return benefits he has already received or alter benefits for which the payments have become due. For example if Xerox failed to send Hackett his benefit check in September, they could not pass an amendment in November reducing his benefits for September—his benefits for September had already accrued; on the other hand Xerox is free to amend the policy in November to change Hackett's benefits for the following January. As for the 1987 personnel manual, Hackett has provided nothing to support the argument that the manual was a plan instrument; as such it is irrelevant to the inquiry here.

Therefore, the 1996 policy controls the termination of Hackett's benefits. That policy grants the plan administrator discretion and we review the termination under the arbitrary and capricious standard.

*b.  The Decision to Terminate*

Review under the deferential arbitrary and capricious standard is not a rubber stamp and deference need not be abject. *Hess*, 274 F.3d at 461. Even under the deferential review we will not uphold a termination when there is an absence of reasoning in the record to support it. The termination decision here is just such a decision.

In reviewing the termination of benefits, we have noted that "ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review' by the administrator." *Halpin v. W.W. Grainger,* 962 F.2d 685, 688-89 (7th Cir. 1992). We have further noted that substantial compliance is sufficient to meet this requirement. *Id.* at 690.

Whether termination procedures substantially complied is a fact-intensive inquiry guided by the question of whether the beneficiary was provided with a statement of reasons that allows a clear and precise understanding of the grounds for the administrator's position sufficient to permit effective review. *Id.* at 690 and 694. In *Halpin* we explained that to meet this standard of substantial compliance "the administrator must weigh the evidence for and against [the denial or termination of benefits], and within reasonable limits, the reasons for rejecting evidence must be articulated if there is to be meaningful appellate review." *Id.* at 695 (internal quotations omitted).

Applying this standard to Hackett's case makes clear that the termination procedures were arbitrary and capricious. After twelve years of paying out disability benefits, Xerox terminated those benefits simply on the basis of an examination by Dr. Holeman, whose conclusion that Hackett was able to work was contrary to numerous prior opinions. Dr. Holeman provided no explanation for his

departure from the opinions of the previous doctors, and Xerox provided no explanation for believing Dr. Holeman's opinion over the opinions of the previous doctors. There was no weighing of the evidence for and against, and there were no articulated reasons given for Xerox's rejection of the evidence that Hackett was unable to work. Conclusions without explanation do not provide the requisite reasoning and do not allow for effective review. *Id.* at 693. We are left without explanation as to why Dr. Holeman's opinion is different from Dr. Gerber's. Had Dr. Holeman referenced the previous opinions and explained his deviation from them, we could have readily reviewed this case. Any non-arbitrary explanation could show that he had weighed the evidence for and against. We could, therefore, assume that any decision by the administrator took these factors into consideration.[3]

### c. Remand

Having concluded that the denial of Hackett's benefits was reached in an arbitrary and capricious manner, we must proceed to determine the appropriate remedy though neither party addressed this issue. The question is whether we should remand the case to the plan administrator for further hearings or remand to the district court with instruction to retroactively reinstate Hackett's benefits. In answering this question a distinction must be noted between a case dealing with a plan administrator's initial denial of benefits and a case where the plan administrator terminated benefits to which the administrator had previously determined the claimant was entitled.

---

[3] Alternatively Xerox likely could have met the standard of substantial compliance despite the lack of reasoning in Dr. Holeman's opinion had they provided a non-arbitrary explanation for their decision to credit his opinion over those of the other doctors. Unfortunately that too is missing from the record.

*Compare Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388, 393-94 (7th Cir. 1983) (remanding to the administrator for new hearing where initial denial of benefits was not procedurally adequate) *with Halpin*, 962 F.2d at 697 (affirming district court's reinstatement of plan benefits where termination was not procedurally adequate). The distinction focuses on what is required in each case to fully remedy the defective procedures given the *status quo* prior to the denial or termination. *See Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472 (7th Cir. 1998).

In a case where the plan administrator did not afford adequate procedures in its initial denial of benefits, the appropriate remedy respecting the *status quo* and correcting for the defective procedures is to provide the claimant with the procedures that she sought in the first place. *Wolfe*, 710 F.2d at 394. If the claimant prevails on remand before the plan administrator, then the claimant would be entitled to retroactive benefits from the time at which the initial denial occurred. *Id.* However the court is not in the place to make the determination of entitlement to benefits. The court must not substitute its own judgment for that of the administrator. *Quinn*, 161 F.3d at 478; *see also Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996). The fact that the plan administrator failed to provide the adequate procedures does not mean that the claimant is automatically entitled to benefits—such a holding might provide the claimant "with an economic windfall should she be determined not disabled upon a proper reconsideration." *Quinn*, 161 F.3d at 478.

On the other hand are cases where the plan administrator terminated benefits under defective procedures. In these cases the *status quo* prior to the defective procedure was the continuation of benefits. Remedying the defective procedures requires a reinstatement of benefits. Thus in Halpin we affirmed the district court's reinstatement of benefits where the plan administrator had arbi-

trarily and capriciously terminated benefits. *Halpin*, 962 F2d at 697. In doing so we distinguished *Halpin* from cases dealing with an initial denial of benefits. *Id.* The distinction was explained further in *Quinn*. There we dealt with an administrator's denial of continuing benefits where under the plan the benefits automatically terminated unless the administrator, after reviewing a claim for continuance, found that continuation was proper. In remanding the case to the administrator we distinguished the case from *Halpin*: "Unlike Halpin . . . Quinn was not scheduled to continue receiving benefits under the program." *Quinn*, 161 F.3d at 478; *see also Schleibaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998) ("A remand was not necessary in [*Halpin*] because the administrator had previously determined that the claimant was eligible for benefits.") and 504 ("[R]einstatement under Halpin was not necessarily appropriate because Mr. Schleibaum had never been adjudged eligible for continuation of his life insurance benefits in the first place."). We noted in *Quinn* that reinstatement was appropriate in cases that, like *Halpin*, "involve claimants who were receiving disability benefits, and, but for their employers' arbitrary and capricious conduct, would have continued to receive the benefits." *Quinn*, 161 F.3d at 477. Hackett's case is just such a case—completely indistinguishable from *Halpin*. Hackett had been previously determined to be disabled, and his benefits would have continued unaltered but for the plan administrator's arbitrary and capricious conduct.

From a practical point of view this distinction makes perfect sense. Hackett's termination was the result of arbitrary and capricious procedures, and therefore his benefits could not have been terminated by those procedures. While a remand to the plan administrator may result in a finding that Hackett is no longer disabled, it cannot result in a finding that the procedures in 1999 were anything other than arbitrary and capricious. Therefore nothing in the administrator's decision could render

Hackett's benefits retroactively terminated. The best the administrator could do is terminate Hackett's benefits on a going forward basis. This, of course, can be accomplished just as easily by initiating a new review of Hackett's eligibility for benefits, which the administrator is free to do after reinstatement of Hackett's benefits. Indeed nothing in this opinion should be read as expressing an opinion that Hackett's benefits should not be terminated in the future. We only address the issue of the procedures necessary for such termination to accord with the statutory requirement. Had Dr. Holeman explained his reasons for disagreeing with Dr. Gerber, this appeal might likely have been unnecessary and the termination might very well have passed the arbitrary and capricious test.

Therefore we find that the appropriate remedy is to remand to the district court with instruction to order retroactive reinstatement of benefits and resolve all other collateral issues.

### III.  Conclusion

The proper standard for reviewing the plan administrator's termination of Hackett's benefits was the arbitrary and capricious standard. Because the termination was arbitrary and capricious the district court erred in denying Hackett's motion for summary judgment and in granting Xerox's motion for summary judgement. We therefore REVERSE the denial of Hackett's motion for summary judgment and the grant of Xerox's motion for summary judgment and REMAND to the district court with instructions to reinstate Hackett's benefits and to resolve all other collateral issues.[4]

---

[4]  Hackett also raises challenges to the denial of various discovery motions. Our holding today renders those challenges moot.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*