PRYOR, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that Helms failed to exhaust his claim for long-term disability benefits and that Helms failed to state a claim for equitable relief, but I respectfully dissent from the majority’s decision to reverse the grant of summary judgment on Helms’s claim for short-term disability benefits.
For Helms to be entitled to summary judgment on his claim for short-term disability benefits, we must conclude that Helms’s evidence proves, with all reasonable inferences drawn in favor of Aetna, that Helms is “continuously unable to perform the essential duties of [his] regular occupation in substantially the same manner as [he] did just before incurring a medically determined physical or mental impairment ... with any adjustments that the Company makes to those responsibilities.” Definition of Disability, 2003 STD Plan at 2. “If the movant bears the burden *835 of proof,” as Helms does here, he “must establish that there is no genuine issue of material fact as to any element [of his claim].” In’l Stamp Art, Inc. v. U.S. Postal Serv., 456 F.3d 1270, 1274 (11th Cir. 2006). This burden is compounded when we apply a deferential arbitrary and capricious standard of review to the determination of the plan administrator. Helms has not satisfied this burden.
Consider the following time line. On February 27, 2003, Helms saw Dr. Epperson and complained of daily headaches “for the past several months.” Dr. Epperson ordered several tests, prescribed Neuron-tin, Hydrocodone, and Topomax, and told Helms to return in a few weeks. Dr. Epperson noted that Helms was “alert and oriented” with a “normal attention span and concentration.” In April, Dr. Epperson expressed his concern for Helms but noted that “[Helms] does not appear ill presently.” Dr. Epperson did not suggest that Helms was disabled, and Helms did not suggest that he could not work because of his headaches. On May 8, 2003, Dr. Epperson noted that Helms’s headaches were “somewhat improved” but that he “has difficulty doing his job at work” because Topomax made him drowsy. Again, no one said Helms was disabled. On June 2, Dr. Epperson noted that Helms’s headaches were “much improved” and that he felt better after stopping Topomax. Dr. Epperson scheduled the next appointment for three or four months instead of three or four weeks. Throughout this period of treatment, Helms performed his work and did not allege that he was disabled by his headaches. All of this evidence allows a reasonable inference that Helms’s headaches did not render him disabled.
Things changed only after Helms underwent surgery to repair a torn rotator cuff on July 8. Although the majority suggests that this statement is a “miseharaeterization of the record,” I disagree. Following that shoulder surgery, Helms sought and obtained disability benefits, but those benefits were unrelated to his migraine headaches. Only after Helms left work and received these short-term benefits did he suggest to Dr. Epperson that his headaches made working impossible and only then did Dr. Epperson begin to assert confidently that Helms was “completely unable to work.” Not only did things change, but the change was largely unexplained.
While Helms was on disability leave for the repair of his torn rotator cuff, Dr. Epperson filed a physician statement, based on an otherwise unrecorded August 15 office visit, that noted Helms could perform sedentary work but left blank the space to describe a patient’s restrictions and limitations. On September 3, Helms returned to Dr. Epperson. Dr. Epperson noted that Helms was “doing remarkably well with no farther headaches ” and could decrease his medication until he was completely off Neurontin. Dr. Epperson also noted that Helms “is retired and trying to get Disability” and “I totally support him in his endeavor to retire.” To make good on his promise of “total[] support,” Dr. Epperson sent several letters to Aetna. First, on September 11, he submitted a new physician statement that inexplicably contradicted his earlier statement that Helms could perform sedentary work and stated instead, without explanation, that Helms was completely “unable to work.” This statement was also inconsistent with Dr. Epperson’s notes about the visit on September 3, which described Helms as “doing remarkably well with no further headaches” and “much improved on present regimen.” Second, after Helms’s claim was denied, Dr. Epperson sent another statement and a letter that reasserted that Helms was “unable to work” because of his *836 headaches. Dr. Epperson sent this statement without any intervening office visit. On November 25, Dr. Epperson finally saw Helms again and, that same day, sent another letter to Aetna asserting, in conclusory terms, that Helms was totally unable to work because his headache medication left him sedated. Notwithstanding the suggestion of the majority, I cannot say that this evidence supports a reasonable inference that Dr. Epperson “violat[ed] ... his ethical duties as a physician.” I can say that this record allows a reasonable inference that Dr. Epperson reached his opinion that Helms was completely “unable to work” because he had promised to suppoi't Helms’s desire to retire, not because Helms’s condition had worsened.
Helms offers nothing more to support his application. Helms wrote on a form that, while he could perform household chores, he had difficulty driving and concentrating. Helms never explained why he could not perform his work if given reasonable accommodations. Helms also never offered evidence of any change in his medical condition following the September 3 visit when Dr. Epperson described him as “doing remarkably well with no further headaches.” Although the majority notes that Helms asserted that his medication “mildly sedated” him, Dr. Epperson only asserted “sedation” as a basis for disability after first asserting no basis for disability and then asserting pain from headaches as a basis for disability. At no time did Helms provide enough evidence to support a conclusion that he was disabled under the terms of the plan.
Although Dr. Epperson’s diagnosis of chronic headaches is unrebutted, his assertion that Helms is “disabled” is a legal opinion, not a medical one. Shaw v. Conn. Gen. Life Ins. Co., 353 F.3d 1276, 1285 (11th Cir.2003) (“[T]he question of whether [a claimant] is ‘totally disabled’ is a mixed one, involving issues of both plan interpretation and fact.”). Because Dr. Epperson never identified what Helms could and could not do, the record does not contain the evidence necessary to conclude that Helms could not do his job. In fact, the record contains ample evidence, such as Dr. Epperson’s notes, his first physician’s statement, and Helms’s ability to work through his headaches and Topomax, that compels the opposite conclusion.
This appeal is absolutely not like Levinson. In that case, a doctor gave a diagnosis of a debilitating heart illness, supported his diagnosis with echocardiograms and other evidence, and explained how the diagnosis rendered Levinson unable to function at work. A nurse disagreed with the doctor’s diagnosis of a heart condition and determined that the claimant was asymptomatic based on his own reading of the echocardiograms. We held that the insurance company could not credit the nurse, who had no expertise in this field and lacked the training to evaluate the medical evidence, against the doctor’s diagnosis. We explained that the insurance company should have had another doctor examine the claimant if the company wanted to dispute the medical diagnosis. After the nurse’s diagnosis was disregarded, only the doctor’s diagnosis remained and summary judgment was appropriate for the claimant. In contrast with Levinson, Helms offered a doctor’s opinions and notes that are internally inconsistent, conclusory, and do not require the legal conclusion that Helms is disabled. Any layperson (a nurse, a claims administrator, a federal judge, or reasonable juror) could find them insufficient to prove that Helms meets the plan’s definition of disability.
In short, this appeal is not a case of Aetna “rebutting” Helms’s expert evidence with a nurse’s opinion, but of Aetna concluding that Helms’s evidence did not *837 prove his claim of disability. All we need to do is read the file. After all, Helms actually performed the duties of his job during the period that he suffered from the worst headaches and while he was drowsy from Topomax.
Because I can arrive at this conclusion without any medical expertise, it is difficult for me to understand how the majority’s criticism of “a nurse’s review” is different from “a rule that qualified nurses can never review claims” or a rule that an IME is always required. Perhaps, the majority’s rule is that a qualified nurse may review a claim but can never deny it? The problem for Helms, as I see it, is not that he failed to provide objective evidence of his medical condition but that the objective evidence he provided — doctor’s notes, doctor’s opinions, medication dosages, work history, etc. — was internally inconsistent, conclusory, and tended to undermine his claim.
If Aetna “sheathed its true justification [for the denial] in boilerplate language” as the majority suggests, then the majority is rightly concerned about its handling of Helms’s case. Still, “[a] decision to deny benefits is arbitrary and capricious [only] if no reasonable basis exists for the decision.” Shannon v. Jack Eckerd Corp., 113 F.3d 208, 210 (11th Cir.1997). Once sued, an administrator is not limited to the reason for denial that it gave the applicant but may argue any reasonable basis for its decision based on the record before it. “We cannot over emphasize the importance of the discretion afforded a claims administrator; the underlying premise of arbitrary and capricious, rather than de novo, review is that a court defers to the discretion afforded the claims administrator under the terms of the plan.” HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 994 (11th Cir.2001).
If all Helms wanted from Aetna was a reasoned explanation for its denial of benefits or for Aetna to order an IME, then Helms could ask us to order the district court to remand this claim to Aetna. See, e.g., Miller v. United Welfare Fund, 72 F.3d 1066, 1074 (2d Cir.1995) (ordering the district court to remand to the administrator because the “present record is incomplete and we therefore cannot conclude that there is no possible evidence that could support a denial of benefits”); Rakoczy v. Travelers Ins. Co., 914 F.Supp. 166 (E.D.Mich.1996) (remanding to administrator “because it failed to adequately state the reasons for denial or describe additional materials that plaintiff could adduce to perfect her claim”). ERISA charges the administrative fiduciary and not the federal courts with providing an initial “full and fair review” of benefit claims, 29 U.S.C § 1133; “[t]he remedy when [an ERISA administrator] fails to make adequate findings or to explain its grounds adequately is to send the case back [to the administrator] for further findings or explanation.” Gallo v. Amoco Corp., 102 F.3d 918 (7th Cir.1996). The remedy is not to change the summary judgment standard in Helms’s favor and place the burden on Aetna to disprove Helms’s claim to benefits. “[T]hat the plan administrator failed to provide the adequate procedures does not mean that the claimant is automatically entitled to benefits [because] such a holding might provide the claimant “with an economic windfall should she be determined not disabled upon a proper reconsideration.’” Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 776 (7th Cir.2003).
I find nothing in either ERISA or this plan that would require Aetna to order another doctor to examine Helms before denying benefits. The plan affirmatively *838 places the burden on Helms to provide Aetna information that “verifies ... and explains the nature and extent of [his] disability.” Although Aetna could have given Helms a better explanation for the denial of his application for benefits, Aetna should not be criticized for having a medical professional — a nurse — review Helms’s medical records. Indeed, a claims administrator with no medical training could have determined that Helms’s medical records did not “verify” or “explain” his disability, but actually cast doubt on it. Like the magistrate judge, I think even a federal judge should be able to see that.