JONKER, District Judge,
dissenting.
In Price I, I stated that I would affirm the District Court’s original decision under the standard articulated in Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609 (6th Cir.1998), because the decision to terminate benefits was arbitrary and capricious. Price v. Bd. of Trs. of the Ind. Laborer’s Pension Fund, 632 F.3d 288, 298 (2011). I continue to hold that view, and therefore respectfully dissent.
This ease involves a decision to terminate disability benefits that had already been awarded, not a decision to grant or deny benefits in the first instance. Moreover, everyone agrees that the beneficiary — Mr. Price — remains disabled, just as he was when the Plan decided to award benefits to him. All agree that Mr. Price originally qualified for and received an award of complete disability benefits in 1990. The Plan in effect at that time by its terms promised to pay the benefits until early retirement age, provided the qualifying participant remained disabled. All agree that Mr. Price qualified for and received an award of occupational disabili *653 ty benefits in 2001. The Plan at that time by its terms also promised to pay the benefits until early retirement age, provided Mr. Price remained disabled. All agree that on January 1, 2007, when the Plan unilaterally stopped paying Mr. Price the promised disability benefits, Mr. Price remained disabled and had not reached early retirement age. In my view, this means the Plan decision to stop paying the previously awarded benefits was arbitrary and capricious.
The Plan apparently terminated the benefits based solely on an amendment it adopted to cut off certain benefits effective December 31, 2006. The Plan adopted the amendment after the disability award to Mr. Price, but decided to apply the amendment retroactively, terminating the benefits it previously awarded under the Plan promising benefits to early retirement. Certainly the Plan has the power to change prospectively the terms on which it offers benefits to Plan participants who have not qualified to receive those benefits. But it is, in my view, arbitrary and capricious for the Plan to terminate benefits that have already been awarded based on a retroactive benefit-stripping amendment. At oral argument, all parties agreed that such a retroactive amendment to the Plan could not lawfully operate to deny or terminate death benefits payable under the Plan. I believe the same is true for disability benefits under the same Plan.
The Plan administrator’s decision to the contrary is arbitrary and capricious for multiple reasons.
First, the result itself defeats the very purpose of disability benefits. A person participates in a disability plan — whether a disability insurance plan, a multi-employer plan, or otherwise — specifically to ensure a reliable income stream during a period of covered disability. If a plan may unilaterally terminate already-awarded benefits while the participant remains disabled, the plan provides no meaningful protection. Everyone agrees that death benefits already awarded cannot be undone in this fashion under the Plan. The same logic should apply to disability benefits under the same Plan. There is no functional distinction between a disability benefit package payable under the Plan terms in effect at the time of disability, and a death benefit package, whether paid out in a lump sum or over a fixed period of time under the same Plan. In both cases, once the person is actually dead or disabled, there is no way to cover the risk through the purchase of alternative coverage. This leaves the participant without the promised plan benefit and without the ability to cover the risk in some other way. That is exactly what happened to Mr. Price here: by the time the Plan cut off his already-awarded benefits based on the retroactive amendment, it was too late to apply for Social Security disability benefits, and it was impossible to get private disability coverage because — as all agree — he was and remains disabled. This means he will have to bear the economic loss of almost six years of lost disability protection— from the arbitrary December 31, 2006 cutoff date to his early retirement date of September 2012.
Second, the decision to discontinue Mr. Price’s benefits results, in my view, from the application of the wrong Plan document. The Plan in effect at the time the benefits were awarded, not a later plan imposing new terms, should govern. I acknowledge broad language in some out-of-circuit case law that would, at first glance, appear to hold to the contrary. See, e.g., Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 774 (7th Cir.2003) (“[AJbsent any language suggesting ambiguity on the vesting question, the controlling plan must be the *654 plan in effect at the time the benefits were denied.”). But on closer examination, I do not believe the case law suggests — much less compels — such a result. This case does not involve an initial decision to grant or deny a benefit, or a post-award determination of a change in disability status, as in Hackett, but rather a decision to terminate a disability benefit previously awarded despite ongoing satisfaction of the disability requirement. In fact, the Seventh Circuit itself suggested this distinction in a later decision commenting on Hackett. Huss v. IBM Medical and Dental Plan, 418 Fed.Appx. 498, 2011 WL 1388543, *5 (7th Cir. April 13, 2011) (explicitly limiting Hackett and holding that for a decision denying benefits based on failure to satisfy a condition precedent to be reasonable, the decision must be based on the plan language in effect at the time the opportunity to fulfill the condition precedent expired, not a later iteration of the plan); see also Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 831 (7th Cir.2004) (“An ERISA benefit cannot be a moving target where the plan administrator continues to add conditions precedent to the award of benefits.”). The Plan document in effect at the time of the original benefit award establishes the reasonable expectations of the parties, including their expectations concerning the duration of the award. Under the terms of each Plan in effect at the time Mr. Price qualified for and was awarded disability benefits, the duration of the benefits was clear: until early retirement, provided he remained disabled, as all agree he is. That is the Plan document that logically must define and limit the rights and duties of the parties as the benefit package is fulfilled during Mr. Price’s ongoing disability.
Finally, even if the Plan administrator properly relied on the Plan document in effect at the time the Plan discontinued Mr. Price’s benefits, it was arbitrary and capricious to terminate the benefits award based on retroactive application of the Plan amendment. The Plan language itself supports this position. The Plan permits retroactive amendment for one limited purpose: “[a]ny amendment to the Plan may be made retroactively by the majority action of the Board of Trustees present and voting in order to bring the Plan in compliance with the Act [ERISA] and any subsequent amendments thereto.” (emphasis added). No one is claiming that the purpose of the amendment here was to comply with ERISA, yet that is by the express terms of the Plan the only possible basis for a retroactive amendment. The Plan’s only other amendment provision makes no reference to retroactivity and actually underscores a concern to avoid benefit reduction — let alone benefit-stripping — amendments: “[N]o amendment shall be made which results in reduced benefits for any Participant whose rights have already become vested under the provisions of the Plan on the date the amendment is made, except upon the advice and counsel of an enrolled actuary.” No one claims the amendment here satisfies the “advice and counsel of an enrolled actuary” limitation either. Here, the Plan applied a benefit-stripping amendment retroactively to cut off the disability benefits previously awarded to Mr. Price, even though the Plan does not by its terms permit retroactive amendments for that purpose.
No other court has, to my knowledge, confronted this particular scenario, but at least two Circuits have commented in dicta that such a benefit-stripping amendment would create concern. See Robinson v. Sheet Metal Workers’ Nat’l Pension Fund, 515 F.3d 93, 98 n. 5 (2d Cir.2008) (questioning “whether ERISA would place restrictions on ... amendments or would require particular language in SPD’s when dealing with changes that could be draco *655 nian, e.g., a total elimination of benefits to people who, by joining the Plan, forewent other, guaranteed, benefits.”); Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 226 n. 6 (5th Cir.2004) (“[W]e need not and do not go so far as to say that it would have been acceptable for [Defendant] to have simply ended the benefit program so that [Plaintiff] would be entitled to no post August 1995 benefits whatsoever even if she were concededly disabled as defined in the plan.”). This is such a benefit-stripping case, and I would hold that the Plan’s application of a retroactive benefit-stripping amendment was arbitrary and capricious.
Accordingly, I would affirm the District Court’s decision, and would find the Plan’s reliance on a retroactive, benefit-stripping amendment arbitrary and capricious.