COLORADO COURT OF APPEALS                                    **2016COA120**

---

Court of Appeals No. 14CA2199
City and County of Denver District Court No. 13CV32393
Honorable Ross B.H. Buchanan, Judge

---

Bobby R. Farmer,

Plaintiff-Appellant,

v.

Colorado Parks & Wildlife Commission, Department of Natural Resources,
State of Colorado,

Defendant-Appellee.

---

ORDER REVERSED

Division IV
Opinion by JUDGE HARRIS
Hawthorne and Román, JJ., concur

Announced August 25, 2016

---

Randy L. Brown, P.C., Randy L. Brown, Grand Junction, Colorado, for Plaintiff-Appellant

Cynthia H. Coffman, Attorney General, Elaine J. Wizzard, Assistant Attorney General, Denver, Colorado, for Defendant-Appellee

¶ 1    Bobby R. Farmer appeals from the decision of the Colorado Parks and Wildlife Commission (Commission) to suspend his wildlife license privileges for twenty years. Farmer contends that the Commission's decision was arbitrary and capricious because it was not based on any standards designed to constrain the hearing officer's unfettered discretion as to the duration of the suspension. We agree and therefore vacate Farmer's suspension.

## I.    Background

¶ 2    Farmer is a big game hunter and guide. In 2006, after working as a registered outfitter for more than fifteen years, Farmer allowed his Colorado outfitter's license to lapse, though he continued to maintain the necessary permits to provide guiding services in Utah.

¶ 3    In 2008, the Division of Wildlife (DOW) received complaints from registered outfitters that Farmer was guiding hunts in Colorado without a license. DOW investigators initiated an investigation that spanned nearly three years and included undercover operations and interviews with numerous clients and associates of Farmer.

¶ 4     In late 2011, Farmer was charged with six counts of illegal sale of big game wildlife in violation of section 33-6-113(2)(a), C.R.S. 2015, a class five felony, for outfitting mountain lion hunts without the proper license. He subsequently pleaded guilty to count 1 of the complaint, which alleged that he had guided a mountain lion hunt for Justin Skalla on January 5, 2009. In exchange for his guilty plea, Farmer received a two-year (unsupervised) deferred judgment and sentence on the single count and the dismissal of the remaining counts. A condition of the deferred judgment agreement prohibited Farmer from engaging in hunting activities, including acting as a guide or outfitter, for two years.

¶ 5     Pursuant to section 33-6-113(2)(a), his guilty plea triggered an administrative hearing by the Commission to determine whether to suspend Farmer's wildlife license privileges. Prior to the hearing, the hearing officer was provided with the DOW's 300-page investigative file, which detailed the factual premise underlying all 6 counts originally charged against Farmer. The hearing officer indicated that he had reviewed the file, and he asked Farmer a few questions based on the investigators' reports. Though Farmer responded to the questions, his lawyer contended that the statute

2

permitted consideration only of the circumstances surrounding the offense of conviction, not of conduct charged but neither admitted to nor proven. Farmer then presented mitigating evidence related to the single count to which he had pleaded guilty.

¶ 6 After the hearing, Farmer received written notice that his hunting license had been suspended for twenty years. In his findings of fact, the hearing officer listed all six counts originally charged against Farmer and detailed the underlying facts. He further concluded that "[e]vidence in the state's case report[] supports the fact that these violations did occur." He explained the twenty-year suspension as follows:

> Mr. Farmer's wildlife violation is considered serious in nature, and appears to represent deliberate and knowing unlawful conduct by the respondent[.] His offenses also appear to represent an intentional disregard for Colorado's wildlife laws and regulations[.] Considering Mr. Farmer's convictions in court, and in balancing his offenses, and the statutorily-authorized period of suspension available for his wildlife violation, pursuant to C.R.S. 33-6-113, a suspension period of 20-years of all of his privileges is warranted and ordered[.]

¶ 7 The hearing officer's order included a list of "[p]revious cases involving Illegal Sale/Outfitting without Registration," consisting of

3

thirteen names with corresponding suspension terms of between fifteen years and life. The hearing officer concluded that Farmer's suspension term was proportional to those imposed on other similarly situated licensees.

¶ 8    Farmer appealed the hearing officer's decision to the Commission. He argued that the hearing officer had erred in considering the unproven conduct and that the participating DOW investigator's approval of the plea agreement, which called for a two-year prohibition on hunting activities, established that his case warranted a much shorter period of suspension.

¶ 9    The Commission affirmed the twenty-year suspension. Like the hearing officer's order, the Commission's decision listed each of the dismissed counts and an extensive factual basis for the charges. The Commission disputed that Farmer had pleaded guilty to any particular count of the complaint, suggesting instead that Farmer had agreed that a factual basis supported any of the violations, and further disputed that the hearing officer had considered any of the conduct underlying the dismissed charges. As explanation for its affirmance, the Commission stated:

4

Mr. Farmer's wildlife-related misconduct is considered very serious in nature[.] His offenses reveal willful, deliberate and intentional wildlife-related criminal misconduct[.] Additionally, significant DOW and judicial resources were spent bringing this case to a conclusion[.] Such conclusion resulted in a criminal conviction against Mr. Farmer[.] These offenses considered together — and particularly with the law enforcement and judicial intervention — demonstrate by clear and convincing evidence an unacceptable pattern of knowing, flagrant and unlawful wildlife offenses which must be addressed.

¶ 10    The Commission's decision included the hearing officer's list of licensees and their suspension periods.

¶ 11    Farmer then initiated this action pursuant to section 24-4-106(7), C.R.S. 2015, for review of the agency's decision. The district court affirmed.

## II.    Standard of Review

¶ 12    Our review of a district court's decision in a proceeding under the State Administrative Procedure Act (APA) is de novo. We sit in the same position as the district court and review the agency's decision for abuse of discretion. *Quercioli v. Colo. Dep't of Nat. Res.*, 201 P.3d 1270, 1271 (Colo. App. 2008).

¶ 13    We may set aside an agency's decision when it abused its discretion or when the decision was arbitrary and capricious, based on findings of fact that were clearly erroneous, unsupported by substantial evidence, or otherwise contrary to law.  § 24-4-106(7); *Grand Cty. Bd. of Comm'rs v. Colo. Prop. Tax Adm'r*, 2016 COA 2, ¶ 26.  The agency's findings of fact are entitled to deference unless they are unsupported by competent evidence or reflect a failure to abide by the statutory scheme.  *Grand Cty.*, ¶ 27.

### III.    Arbitrary and Capricious Agency Action

¶ 14    Farmer contends that he was deprived of due process because neither sections 33-6-106 and -113, C.R.S. 2015, nor any applicable regulations contain sufficient standards to constrain the Commission's discretion in determining the length of his suspension.  Although we do not consider this to be a due process issue, we agree that there were insufficient standards to guide the Commission's decision, and thus conclude that it acted arbitrarily and capriciously when it suspended Farmer's license.

### A.    Preservation

¶ 15    As an initial matter, the Commission contends that Farmer failed to preserve this issue for review because he did not raise it at

6

any point during his administrative hearing and he did not raise it in the district court until he filed his reply brief.

¶ 16    Ordinarily, an issue not raised before a hearing officer is waived. *Chostner v. Colo. Water Quality Control Comm'n*, 2013 COA 111, ¶ 39. However, when the hearing officer has no authority to address the issue, it can be raised for the first time on appeal. *See United Airlines v. Indus. Claim Appeals Office*, 2013 COA 48, ¶ 27 (because administrative law judge is not authorized to address constitutional issue, it need not be raised during administrative hearing); *see also Clasby v. Klapper*, 636 P.2d 682, 684 n.6 (Colo. 1981) ("There was no need for the appellant to present his constitutional challenge to the board before raising that issue on appeal to the district court. Since the board could not rule on that claim, it would serve no purpose to impose such a requirement.") (citations omitted). This is especially true when resolution of the issue does not require the hearing officer to make any factual determinations. *See United Airlines*, ¶ 29.

¶ 17    Farmer's claim is that sections 33-6-106 and -113 do not provide sufficient standards to guide the hearing officer's discretion. The hearing officer had no authority to address either the

constitutional or statutory merits of his argument. *See Clasby*, 636 P.2d at 684 n.6. And this is a pure issue of law that requires no factfinding by the hearing officer. Thus, we may consider this issue even though it was not raised in the administrative hearing.

¶ 18    As for the argument that Farmer raised the issue for the first time in his reply brief in the district court, we note that the timing did not prejudice the Commission as the district court allowed the Commission to fully address the merits of Farmer's argument in a surreply. On appeal, the Commission chose not to respond to Farmer's due process argument, but we requested supplemental briefing. Therefore, the issue has been fully briefed in this court as well.

¶ 19    Farmer's claim presents a pure issue of law, the parties have had an opportunity to brief the merits of the claim in the district court and on appeal, the factual record is sufficiently developed, and we would apply a de novo standard in any event. Under these circumstances, we will exercise our discretion to consider Farmer's claim. *See Grohn v. Sisters of Charity Health Servs. Colo.*, 960 P.2d 722, 727 (Colo. App. 1998) (Issues raised in reply briefs are not properly preserved on appeal "where the opposing party was unable

to respond."); *see also United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir. 2007) (a court can exercise discretion to address unpreserved issue of law where parties have briefed the issue).

### B.   Statutory Scheme for License Suspensions

¶ 20     The Commission is a part of the Department of Natural Resources with authority to regulate the taking, possession, and use of wildlife.  § 33-1-106, C.R.S. 2015.  Pursuant to section 33-1-106(1)(e), the Commission may provide for the issuance of licenses for hunting, fishing, trapping, or possession of wildlife.  And under section 33-6-106, and any rules and regulations adopted under articles 1 to 6 of title 33, the Commission may suspend or revoke such a license.

¶ 21     Section 33-6-106 creates a license suspension scheme similar to the point system of the Division of Motor Vehicles (DMV).  Convictions for violations of wildlife laws result in points assessed against a person's license; if a person accumulates twenty points within a five-year period, the Commission may suspend the person's license for a period not to exceed five years.  § 33-6-106(1).  However, under section 33-6-113(2)(a), in lieu of any point

assessment, a person convicted of illegal sale of wildlife (big game) faces a license suspension of anywhere from one year to a lifetime.

¶ 22    Any person who is considered for suspension has a right to a hearing to show cause why his or her license should not be suspended.  § 33-6-106(3).  According to the Commission, the hearing is a nonadversarial proceeding, *see Woodrow v. Wildlife Comm'n*, 206 P.3d 835, 838 (Colo. App. 2009), where the licensee bears the burden of proof to show mitigating circumstances and to persuade the hearing officer that, in spite of the conviction or convictions, his or her license should not be suspended.

¶ 23    Finally, section 24-4-104, C.R.S. 2015, directs that "[e]very agency decision respecting the . . . suspension . . . of a license shall be based solely upon the stated criteria, terms, and purposes of the statute, or regulations promulgated thereunder, and case law interpreting such statutes and regulations pursuant to which the license is issued or required."  § 24-4-104(2).

C.  Sufficiency of the Commission's Standards

¶ 24    Farmer contends that the lack of standards to guide the hearing officer's decision constitutes a due process violation.  While some courts have identified this issue as a procedural or

10

substantive due process problem, *see, e.g., Elizondo v. State, Dep't of Revenue*, 194 Colo. 113, 117, 570 P.2d 518, 521 (1977); *Cendant Corp. & Subsidiaries v. Dep't of Revenue*, 226 P.3d 1102, 1108 (Colo. App. 2009), others frame it as an arbitrary and capricious exercise of authority prohibited by the APA. *See, e.g., Feeney v. Colo. Ltd. Gaming Control Comm'n*, 890 P.2d 173, 176-77 (Colo. App. 1994).[1] Under either framework, the crux of the issue is that agency decision-making must demonstrate the use of sufficient standards to ensure rational and consistent results in individual agency actions. *Zamarripa v. Q & T Food Stores, Inc.*, 929 P.2d 1332, 1342 (Colo. 1997). While we conclude that Farmer's claim is more appropriately analyzed under the statutory framework, the substance of the issue remains the lack of sufficient standards.

¶ 25    Everyone would agree that an administrative agency cannot validly engage in quasi-judicial decision-making without sufficient standards. *Cottrell v. City & Cty. of Denver*, 636 P.2d 703, 709 (Colo. 1981); *Squire Rest. & Lounge, Inc. v. City & Cty. of Denver*, 890 P.2d 164, 166 (Colo. App. 1994); *see also State Farm Mut. Auto.*

---

[1] Other courts conceive of the problem as a violation of the nondelegation doctrine. *See Cottrell v. City & Cty. of Denver*, 636 P.2d 703, 709 (Colo. 1981).

*Ins. Co. v. City of Lakewood*, 788 P.2d 808, 816 (Colo. 1990).

Sufficient standards are "necessary to give fair notice of the criteria

to be used so that a case may be prepared, to ensure that all

decision makers are using uniform criteria, and to provide a

meaningful basis for judicial review." *State Farm*, 788 P.2d at 816.

Just as importantly, standards "protect against unnecessary and

uncontrolled exercise of discretionary power." *Cottrell*, 636 P.2d at

709.

¶ 26     To determine whether there are sufficient standards to guide

an agency's discretion, "the appropriate analysis is to determine

first whether sufficient statutory standards or safeguards exist to

fulfill these functions. Second, if those standards and safeguards

are inadequate, it must be determined whether additional

administrative standards and safeguards accomplish the necessary

protection from arbitrary action." *Id.* at 709-10.

¶ 27     Under *Cottrell*, we begin the analysis by looking at the

standards provided in the statutory provision which provides for the

suspension, section 33-6-113. This statute, however, provides no

standards. Rather, the statute merely provides that, upon

conviction for the illegal sale of big game, "the commission may

suspend any or all wildlife license privileges of the person for a minimum of one year to life." § 33-6-113(2)(a). There is no further statutory guidance on when a conviction warrants suspension or for how long.[2]

¶ 28     We look to the Commission's rules and regulations to identify any applicable standards. But there are no regulations providing any standard for the suspension of wildlife license privileges. Although the Commission has general rulemaking authority, § 33-1-104(1), C.R.S. 2015, and the legislature has more specifically authorized the promulgation of rules related to licenses, § 33-1-106(1)(e), the Commission has not established any rules governing the suspension of wildlife privileges. Thus, under this scheme, neither the statute nor regulations provide standards to guide a

---

[2] In contrast, the statute does provide criteria for determining whether a suspension may be set aside before the term has expired. Under section 33-6-106(9)(a), C.R.S. 2015, a licensee may petition the Commission to end a suspension early. The Commission may end a suspension if (A) the person is unlikely to violate article 6 again; (B) the person has not been convicted of or pleaded guilty or nolo contendere to any violation of articles 1-6 after the suspension was imposed; and (C) the suspension is the person's first in Colorado. § 33-6-106(9)(c)(I). The Commission may also consider whether the person has been convicted of or pleaded guilty or nolo contendere to any misdemeanor or felony. § 33-6-106(9)(c)(II).

hearing officer's determination whether to suspend a licensee's wildlife privileges for one year or a lifetime.

¶ 29    In addressing Farmer's claim that this lack of standards leads to arbitrary conduct, we find *Elizondo v. Department of Revenue*, 194 Colo. 113, 570 P.2d 518 (1977), instructive.  In *Elizondo*, the DMV had the authority to grant probationary driver's licenses to drivers whose permanent licenses had been revoked.  However, the statute contained no standards or constraints on the exercise of this power.  And although the DMV was statutorily authorized to promulgate rules regulating the granting of probationary licenses, it had declined to exercise this authority.

¶ 30    Because neither the statute nor any regulations circumscribed the exercise of this power, hearing officers were afforded "unfettered discretion," and thus the scheme provided no "assurance that each hearing officer will not, consciously or subconsciously, follow standards quite different from those applied by his or her colleagues." *Id.* at 118, 570 P.2d at 521.  The supreme court concluded that without any constraint on the hearing officers' discretion, "judicial review is a hollow gesture." *Id.*  Thus,  to "reduce significantly the possibility that the decision process will be

14

arbitrary," the court remanded for a new hearing and concluded that the DMV could not deny any request for a probationary license until it promulgated rules to guide the hearing officers' discretion in the matter. *Id.* at 119, 570 P.2d at 522.

¶ 31 While we recognize that specific standards are not required, either the statute or administrative regulations must provide at least some guiding principle for an agency's decision. *See Douglas Cty. Bd. of Comm'rs v. Pub. Utils. Comm'n*, 829 P.2d 1303, 1311 (Colo. 1992) (distinguishing *Elizondo* to uphold agency's broad discretion because statute required agency to make a finding of reasonableness and other statutes and regulations guided the agency's determination of whether utility's request was reasonable).

¶ 32 We are not persuaded by the Commission's reliance on *Kibler v. State*, 718 P.2d 531 (Colo. 1986), or *Douglas County Board of Commissioners v. Public Utilities Commission*. In *Kibler*, the plaintiff claimed that a statute governing the revocation of a nursing license was unconstitutionally vague because it failed to sufficiently delineate the proscribed conduct and provide standards for the imposition of discipline. There, however, the statute proscribed a range of conduct and enumerated various penalties that could be

15

imposed based on the severity of the underlying conduct.  Thus, as the court concluded, the statute appropriately provided the nursing board with the discretion to "address the varied degrees of culpability" associated with the listed misconduct.  718 P.2d at 535.

¶ 33    Here, in contrast, the statute only contemplates one type of misconduct, a conviction under section 33-6-113, yet the Commission is given unfettered discretion to impose a suspension for anywhere from one year to a lifetime.  Unlike the statute in *Kibler*, the imposition of a suspension is not a matter of matching the more culpable conduct listed in the statute with a more severe penalty, but instead applying any term of suspension to the same underlying misconduct.  Therefore, the reasoning in *Kibler* is not applicable to the statutory scheme at issue here.

¶ 34    And in *Douglas County*, although the Public Utilities Commission (PUC) had broad discretion to order "reasonable improvement[s]," the statute specifically required that the PUC make a finding of reasonableness before approving such improvements.  829 P.2d at 1312.  The supreme court concluded that the reasonableness standard was sufficiently specific, particularly where other PUC rules and related statutes guided the

reasonableness inquiry. *Id.* at 1312-13. Again, unlike the statute at issue here, the statute upheld in *Douglas County* provided a standard to guide the agency's discretion.

¶ 35    Section 24-4-104 requires that suspension of a license be based solely upon stated criteria, terms, and purposes of the statute or regulations promulgated to implement the statute. We discern no stated criteria or terms upon which the hearing officer could have based his decision to impose a twenty-year suspension of Farmer's license.

¶ 36    The hearing officer and the Commission insist that they did not consider the unproven conduct described in the reports provided by the DOW investigators. Indeed, the Commission asserted that had the hearing officer considered the facts underlying the other charges, he would likely have imposed a lifetime suspension. Still, the hearing officer's order and the Commission's decision refer to "offenses," "offenses taken together," and a "pattern . . . of wildlife offenses," which seem to suggest consideration of conduct beyond the one unlicensed hunt with Skalla in January 2009 that formed the basis of count 1 of the

complaint.[3]  Nevertheless, we take the hearing officer and the Commission at their word and assume that they considered only the facts surrounding Farmer's offense of conviction.

¶ 37    But that assumption only raises additional questions about how the hearing officer arrived at a twenty-year suspension. Contrary to the Commission's assertion that "inherent factors" provide sufficient guidance for determining the length of a suspension, we cannot discern what factors underlying Farmer's misconduct contributed to his twenty-year suspension.

¶ 38    According to the DOW's reports, Farmer donated a hunt to the Safari Club International, and Skalla paid the club $4500 for the hunt.  Farmer and Skalla hunted in Utah for several days, but when the mountain lion they were tracking crossed the border, they

---

[3] Like the district court, we must take exception with the Commission's finding that the "court's disposition. . . does not appear to make reference to any single violation that Mr. Farmer committed."  The plea agreement and deferred sentencing stipulation both make clear that Farmer pleaded guilty to count 1 of the complaint (which referenced the Skalla hunt in January 2009) in exchange for the dismissal of all other counts.  Farmer acknowledged that there was a factual basis to support his guilty plea to count 1, but he did not otherwise admit during the court proceedings to any violations of the statute.

followed it and Skalla killed the animal in Colorado. Skalla tipped Farmer $400.

¶ 39     The Commission contends that factors such as the level of mens rea and whether the violation is a felony or a misdemeanor provide sufficient guidelines for imposing a license suspension. The hearing officer and the Commission justified Farmer's long suspension on the ground that his violation represented "willful, deliberate and intentional wildlife-related criminal misconduct." But the mens rea required for a violation of section 33-6-113 is knowing (willful), not intentional or deliberate. There may be cases — though this is not one of them (the facts underlying count 1 do not suggest that Farmer intentionally provided unauthorized guide services in Colorado) — where the facts establish a higher mens rea, but in general every licensee facing suspension will have engaged in willful criminal misconduct amounting to a felony offense. Accordingly, these factors could not be a useful guide for distinguishing among licensees based on degree of culpability.

¶ 40     The Commission also found relevant that significant DOW and judicial resources were expended in bringing the case to a conclusion. Setting aside whether the cost of prosecution is a

proper factor to consider in an aggravation analysis (one might reasonably worry that it would chill a defendant's exercise of the right to trial), the record shows that Farmer pleaded guilty, resulting in an unsupervised deferred judgment and sentence. Imagining a less expensive resolution of a criminal case would be difficult.

¶ 41 Nor are we persuaded that the agency's action, though guided by no standards or criteria, was not arbitrary because other, similarly situated licensees also received long suspensions. For one thing, the range of suspensions imposed on licensees who committed a single violation of the statute is quite broad: fifteen years in some cases, a lifetime suspension in others. In the absence of any further information about the licensees or the criteria used to distinguish among them, we are left to wonder why similarly situated licensees received different periods of suspension. Moreover, if a conviction for a single violation of section 33-6-113(1)(a) warrants in all cases a fifteen-year to life suspension, we must also wonder what conduct would merit a suspension of less than fifteen years. The legislature contemplated that suspensions under section 33-6-113 would range from one year to a lifetime.

The hearing officer's decision to impose, in every case, a minimum suspension term of fifteen years for a single violation of the statute does not give complete effect to the legislature's intent.

¶ 42    In sum, we are simply unable to determine how or why the hearing officer arrived at a twenty-year suspension term based on Farmer's offense of conviction.  The absence of any standards to guide the Commission's discretion contravenes section 24-4-104(2)'s express directive that licensing decisions be based solely on stated criteria and hinders effective judicial review.  At oral argument, the Commission insisted that its unfettered discretion to impose any term of suspension meant that a reviewing court would be obligated to affirm Farmer's suspension under *any* circumstance, whether the suspension was for one year or a lifetime.  That assertion proves the point: judicial review is a meaningless gesture without adequate constraints on a hearing officer's discretion.  *Elizondo,* 194 Colo. at 118, 570 P.2d at 521.

¶ 43    Thus, because neither the statute nor any applicable regulations provide sufficient standards to guide the agency's suspension decision, we conclude that the Commission's action in suspending Farmer's license was arbitrary and capricious.  *See*

*Feeney*, 890 P.2d at 177 (license revocation would be arbitrary without sufficient standards). Because there are no stated criteria governing the suspension decision, we reverse the decision of the district court and vacate Farmer's suspension.

¶ 44 We decline to remand for a new hearing. In crafting a remedy, we seek to restore the parties to the status quo before the agency's arbitrary and capricious conduct. *See Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003). Here, Farmer's license was suspended under defective procedures, so the status quo prior was no suspension; thus, any remedy must vacate the suspension. If we were to remand instead, although the hearing officer could adjust Farmer's term of suspension, he could not find that the lack of standards was anything but arbitrary and capricious. *Id.* Accordingly, remanding to the hearing officer would not provide Farmer a complete remedy for the arbitrary and capricious suspension of his license under defective procedures. *Id.*; *cf. Berge v. United States*, 949 F. Supp. 2d 36, 42-43 (D.D.C. 2013) (Court may "forego the futile gesture of remand to the agency" where there is only one appropriate outcome.).

¶ 45 Though the *Elizondo* court remedied the DMV's violation of due process by remanding for a new hearing that comported with due process standards, 194 Colo. at 119-20, 570 P.2d at 522-23, there, the status quo before the arbitrary and capricious agency action was that the claimant did not have a probationary license; thus, the appropriate remedy to correct the defective procedures was to provide the claimant with the proper procedures for obtaining a probationary license. *Hackett*, 315 F.3d at 776. Here, in contrast, Farmer already had wildlife privileges before the defective suspension proceedings, and thus those must be restored. *Id.* We express no opinion on whether the Commission could, after adopting appropriate standards to guide the hearing officer's suspension decision, institute new suspension proceedings against Farmer.

## IV. Remaining Contentions

¶ 46 In light of our conclusion that the suspension was arbitrary and capricious, we need not resolve Farmer's other contentions.

## V. Conclusion

¶ 47 We reverse the order of the district court and vacate Farmer's suspension.

JUDGE HAWTHORNE and JUDGE ROMÁN concur.